Argued and submitted October 14, 1981, affirmed in part
and modified; reversed in part and remanded April 26,
reconsideration denied June 10,
petition for review allowed July 13, 1982 (293 Or 373)

CAMERON et al,
*Respondents,*

*v.*

BENSON et al,
*Appellants - Third-Party Plaintiffs,*

*v.*

SAFECO TITLE INSURANCE COMPANY,
*Respondent - Third-Party Defendant.*

(No. A7901-00080, CA 18573)

643 P2d 1360

John S. Marandas, Portland, argued the cause for appellants - third-party plaintiffs. On the briefs was Gary J. Lekas, Portland.

Ted M. Miller, Portland, argued the cause for respondents. With him on the brief was McCormick & Reynolds, Portland.

Robert T. Scherzer, Portland, argued the cause for respondent - third-party defendant. With him on the brief was Wheelock, Niehaus, Hanna, Murphy, Green & Osaka, Portland.

Before Gillette, Presiding Judge, and Young, Judge, and Roberts, Judge Pro Tempore.

YOUNG, J.

## YOUNG, J.

Plaintiffs, purchasers under a contract for the sale of real property, brought this action for specific performance of that contract. Defendants-third-party plaintiffs (defendants), vendors under the contract, sought indemnity from Safeco, which had issued a policy of title insurance covering the property. Safeco, in turn, sought cancellation of that policy. The trial court ordered specific performance by the defendants but, in the event that they did not perform within 60 days, ordered that they pay damages. The court also ordered the title insurance policy rescinded. Defendants appeal. We affirm in part, reverse in part and remand.

The property which is the subject of this dispute was owned by defendants, who, on March 30, 1973, conveyed it by deed to McCuddy's Marina. The property, along with three other properties, was transferred to McCuddy's in exchange for a stock interest, made in conjunction with defendant James Benson's employment with McCuddy's. The deed was recorded on June 4, 1973.

When James Benson decided to terminate his employment with McCuddy's, it was decided that the transfers would be rescinded. McCuddy's executed a deed, dated April 23, 1973, reconveying the property to defendants. That deed was not recorded until April, 1974.

During the period from April, 1973, to April, 1974, before the deed re-conveying the property to defendants was recorded, various judgments totaling over $40,000 were obtained against McCuddy's and were shown as unsatisfied on the public records. Plaintiffs entered into a contract for the purchase of the subject property from defendants in May, 1974. No preliminary title report or title insurance policy was sought at that time.

In November, 1978, plaintiffs notified defendants that they wanted to pay the unpaid balance under the contract and receive a deed and title insurance policy. The contract provided that defendants would provide a title insurance policy insuring marketable title and would "* * * deliver a good and sufficient deed conveying said premises * * * free and clear of encumbrances * * *."

Defendants requested a preliminary title report from Pioneer National Title Insurance Co. in October, 1978. That report disclosed the recorded judgments against McCuddy's Marina, as well as a mortgage lien placed on the property by defendants. In November, 1978, defendants sought a title report from Safeco. That report showed neither the lien nor the judgments, and defendants did not inform Safeco of their existence. Defendants purchased a policy of title insurance from Safeco and tendered it, along with a bargain and sale deed to plaintiffs. Plaintiffs refused the tender because of the outstanding judgment liens.

Plaintiffs filed suit for specific performance or damages. Defendants tendered the defense to Safeco, but that tender was declined. Defendants then brought a third-party action against Safeco for indemnity. Safeco counterclaimed for rescission of the title policy, claiming that defendants' knowledge of the judgments outstanding on the property and their failure to inform Safeco of those judgments when it became apparent that Safeco was unaware of them prevented the formation of a contract between Safeco and defendants.

Defendants assign as error the trial court's holding that there were judgment liens against the subject property. Plaintiffs correctly point out that the trial court did not hold that there were liens outstanding against the property, but only that plaintiffs were "entitled to receive a deed and a policy of title insurance completely unfettered by disputed liens that have not been adjudicated." We agree with the trial court that the issue presented is not whether the judgments against McCuddy's are actually liens against the property, but whether plaintiffs are required to accept the property with the liens appearing of record.

■ A purchaser is not required to accept title which might reasonably be expected to involve litigation. "[I]f there is doubt and uncertainty about the title sufficient to form the basis for litigation, * * * it cannot be thrown upon the purchaser to contest that doubt * * *." *Wollenberg v. Rose,* 45 Or 615, 78 P 751 (1904); *see Heider v. Dietz,* 234 Or 105, 380 P2d 619 (1963); *Percy v. Miller et al.,* 197 Or

230, 251 P2d 463 (1953); *Security Sav. & Trust Co. v. Latta,* 118 Or 559, 247 P 777 (1926).[1]

■ The judgment creditors with recorded liens against the property were not made parties to the proceedings in the trial court. It is apparent that any determination of the validity of the liens made by the trial court in this proceeding would not be binding on those judgment creditors. That determination, then, would be of no benefit to the purchasers. A court cannot create a marketable title "by passing upon an objection depending on a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right was vested." *Wollenberg v. Rose, supra,* 45 Or at 622; *see Heider v. Dietz, supra.*

■ The trial court properly refrained from attempting to make a determination as to the validity of the judgment liens. Those liens, appearing as they do on the public record, and amounting to over $40,000, are not "frivolous and astute niceties," but are such "as would induce prudent men to hesitate in accepting title affected by them." *Security Savings & Trust Co. v. Evans, supra,* 144 Or at 23. Plaintiffs were not required to accept title with the validity of the liens unresolved.

■ Defendants further contend that the trial court erred in basing its award of alternative damages, in the event that defendants failed to specifically perform within 60 days, on the value of the property at the time of trial, rather than at the time the property should have been conveyed. Plaintiffs presented evidence that the value of the property in November, 1978, when defendants were to have conveyed the property, was $33,500. In post-trial proceedings the trial court allowed plaintiffs' motion to increase the basis for the award of damages to $38,500, the value of the property at the time of trial.

Plaintiffs recognize that the usual time for measuring damages for breach of contract is as of the time of the

---

[1] "The quality of title necessary to fulfill the terms of the contract [requiring marketable title] is not that title which might be established in a lawsuit, but, rather, that title which, when offered, is so complete that it need not be proved by recourse to the courts, for * * * the vendee 'is not compelled to purchase a lawsuit.'" Note, 33 Or L Rev 77, 81 (1953); *see Security Savings & Trust Co. v. Evans,* 144 Or 15, 24, 21 P2d 782 (1933).

breach. They contend, however, that in this situation the breach will only occur if and when defendants fail to specifically perform the contract as ordered by the trial court. That is not so. Defendants breached the contract when they failed to provide good and sufficient title to the property at the time they were called upon to do so in November, 1978. The order of specific performance by the trial court and the alternative award of damages are remedies for that breach. Damages are measured as of the time of breach. *Freedman v. Cholick et ux,* 233 Or 569, 379 P2d 575 (1963); *County of Lincoln v. Fischer et al,* 216 Or 421, 339 P2d 1084 (1959); *Crahane et al v. Swan,* 212 Or 143, 318 P2d 942 (1957).

■ Defendants also assign as error the award to plaintiffs of $3,000 in attorney fees, contending that there is insufficient evidence in the record to support such an award. Plaintiffs presented expert testimony based on a hypothetical question which included assumptions about the nature of the case, some of the issues involved, the fact that summary judgment motions had been argued and that plaintiffs' chief counsel had spent approximately 71 hours and his associate had spent 17 hours on the case. The expert gave an opinion as to what would be a reasonable attorney fee. Although there had been no evidence as to the number of hours spent by plaintiffs' counsel, there was no objection to the question. No further evidence on the issue was presented.

Defendants later pointed out to the court that there was no evidence of the number of hours spent by plaintiffs' counsel on the case. Plaintiffs' counsel asked to re-open the case, whereupon the following exchange took place:

"[Plaintiffs' Counsel]: One question. I mentioned my request to reopen, if necessary —

"The Court: Yes.

"[Plaintiffs' Counsel]: — to show my time. Does the Court feel that's necessary, or what's in the record is sufficient?

"The Court: The record only shows the statement that you made about it.

"[Plaintiffs' Counsel]: That's in my hypothetical assuming I had this many hours in it.

"The Court: No objection was made?

"[Plaintiffs' Counsel]: No, sir.

"The Court: I have no objection to your taking the stand — as a matter of fact, reopening and taking the stand, if [defendant's counsel] thinks something —

"[Defendants' Counsel]: If he wants to state that if he were called to the stand, he would testify to those hours, I'll stipulate to it, Your Honor.

"The Court: All right.

"[Defendants' Counsel]: He did fail, however, to put it in.

"[Plaintiffs' Counsel]: And as to [my associate's] time —

"The Court: All right.

"[Defendants' Counsel]: All right.

"The Court: * * * Thank you."

Although it is not entirely clear, we believe that defendants' counsel stipulated that plaintiffs' counsel would testify to the number of hours spent on the case as indicated in the hypothetical question asked of the expert witness. This evidence, along with the testimony of the expert, satisfies the requirements of *Newbern v. Gas-Ice Corporation,* 263 Or 250, 501 P2d 1294 (1972), and is a sufficient basis for the award of attorney fees.

■ Defendants finally assign as error the trial court's order rescinding, on the basis of unilateral mistake, the policy of title insurance issued by Safeco. Safeco argues that defendants' knowledge of the judgments and the mortgage outstanding against the property and their failure to inform Safeco when it was evident from the title report that Safeco was unaware of those encumbrances, justify rescission. The trial court agreed. We conclude, however, that rescission was error. The trial court relied upon *Rushlight Co. v. City of Portland,* 189 Or 194, 219 P2d 732 (1950), a case involving a bid for construction of a sewer, which held that

"* * * in this State an offer and an acceptance are deemed to effect a meeting of the minds, even though the offeror made a material mistake in compiling his offer, provided the acceptor was not aware of the mistake and had no reason to suspect it. But if the offeree knew of the mistake, and if it was basic, or if the circumstances were such that he, as a reasonable man, should have inferred that a basic mistake was made, a meeting of the minds does not occur." 189 Or at 244.

There may be some question whether this rationale applies in the context of an insurance contract. *See Arthur v. Palatine Ins. Co.,* 35 Or 27, 57 P 62 (1899); *Sproul v. Western Assurance Co.,* 33 Or 98, 54 P 180 (1898); *Koshland v. Hartford Ins. Co.,* 31 Or 402, 49 P 866 (1897). We need not decide that question in the abstract, however, because in this case the parties to the insurance policy provided for the allocation of the risk of a mistake by the company. The policy contains a schedule of exclusions from coverage, which provides in part:

> "This policy does not insure against loss or damage by reason of the following:
>
> "* * * * *
>
> "4. Defects, liens, encumbrances, adverse claims against the title as insured or other matters
>
> "* * * * *
>
> "(2) *known to the Insurance Claimant* either at the date of this policy or at the date such Insured Claimant acquired an estate or interest insured by this policy *and not shown by the public records,* unless disclosure thereof in writing by the Insured shall have been made to the Company prior to the date of this policy * * *." (Emphasis added.)

It is undisputed here that the liens and the mortgage which encumber the title to the subject property were "shown by the public records."

The rationale for allowing rescission on the basis of unilateral mistake is that no contract has in fact been entered, because a meeting of the minds has not occurred. *See Rushlight Co. v. City of Portland, supra.* The insurance policy issued by Safeco, in language chosen by it, specifically excluded coverage for encumbrances known to the insured and *not shown* by the public records. Implicit in that language is an assumption by Safeco of the risk of encumbrances *shown* in the public records, whether or not the insured had knowledge of them at the time the policy issued. It is reasonable that a title insurance company would assume liability for finding what is shown in the public records regarding title to property. Because of that undertaking, we conclude that Safeco may not rescind the policy for failing to discover what was a matter of public record, even though defendants were aware of those encumbrances. The trial court's order rescinding the title insurance policy must be reversed. This does not, however,

establish what, if anything, Safeco is required to pay under that policy. Because the trial court ordered the policy rescinded, it did not rule on defendant's claim against Safeco for indemnity under the policy. We remand for resolution of that claim.

The order granting specific performance or, alternatively, damages, and providing for attorney fees is affirmed, except that the basis for the contingent award of damages is modified to reflect the value of the property at the time of the breach, that is, $33,500. The order rescinding the title insurance policy is reversed, and the case is remanded for consideration of the claim of indemnity.