Argued and submitted May 6, 1994, affirmed January 4, petition for review denied
April 18, 1995 (321 Or 47)

George GEBRAYEL,
*Appellant,*

*v.*

TRANSAMERICA TITLE INSURANCE
COMPANY,
a California corporation;
and Yamhill County Title & Escrow, Inc.,
an Oregon corporation,
*Respondents,*

*and*

SPECTRUM PROPERTIES, INC.,
an Oregon corporation,
*Defendant.*

(9205-03308; CA A80392)

888 P2d 83

Ridgway K. Foley, Jr. argued the cause for appellant. On the briefs were M. Elizabeth Duncan, Foley & Duncan, Douglas R. Hookland, Michael J. Scott and Furrer & Scott.

Jonathan M. Radmacher argued the cause for respondents. On the brief were Don G. Carter and McEwen, Gisvold, Rankin, Carter & Streinz.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

RIGGS, J.

**RIGGS, J.**

Plaintiff appeals from the grant of summary judgment on his claims for breach of the duty to defend, breach of escrow instructions, negligent misrepresentation and fraud. We affirm.

We review the record in the light most favorable to plaintiff, the party opposing the motion for summary judgment. *Yartzoff v. Democrat-Herald Publishing Co.*, 281 Or 651, 655, 576 P2d 356 (1978). This case concerns a title insurance policy issued by defendant Transamerica Title Insurance Company (Transamerica) through its agent, defendant Yamhill County Title and Escrow (Yamhill) to plaintiff.[1] The policy covered the title to three adjacent parcels of real property in Yamhill County. Before the purchase, Yamhill had issued a third and final preliminary title report on July 30, 1987, which provided that the policy would be issued

> "subject to the usual printed conditions and stipulations and exclusions from coverage appearing in such policy form and the following:
>
> "1. The rights of the public in and to that portion of the herein described property lying within the limits of streets, roads and highways."

The title policy was issued on September 11, 1987, and included "schedule B," which provided:

> "This policy does not insure against loss or damage, nor against costs, attorney's fees or expenses, any or all of which arise by reason of the matters shown or referred to in this schedule * * *
>
> "Part I [printed exclusions]
>
> "* * * * *
>
> "3. Easements, liens, or encumbrances, or claims thereof, which are not shown by the public record * * *
>
> "* * * * *
>
> "Part II [special exclusions]

---

[1] Plaintiff bought the property with Judith Carlacio, whom he later married. However, they are now divorced and all rights to the property are controlled by plaintiff.

"1. The rights of the public in and to that portion of the herein described property lying within the limits of streets, roads and highways."

In addition, the title policy included the following special exclusion in part II, not found on any previous title report ("exclusion 2"):

"2. Easement, if any, for an existing logging road as disclosed by partitioning approval, recorded: September 29, 1976, Film Volume 115 Pa[ge] 022."

This exclusion was inserted by Yamhill after Yamhill received a telephone call from the seller shortly before closing that alerted Yamhill to a possible claim of easement rights over the property. At no time prior to closing did Yamhill communicate any information about the possible claim to plaintiff.

In February, 1988, Virginia Moyer filed an action against plaintiff seeking (1) to establish a way of necessity; (2) to reform a deed in plaintiff's chain of title to reserve an easement or (3) to obtain an implied easement.[2] On February 23, plaintiff rejected the title insurance policy, because it included exclusion 2, which was not set forth in the preliminary title report. In March, Transamerica acknowledged that exclusion 2 should not have been written into the policy and agreed to rewrite the policy without the exclusion. At the same time, plaintiff also tendered defense of the Moyer action to Transamerica. Transamerica rejected the tender of defense, because the claims were not based on any public records and, therefore, were excluded from coverage under exclusion 3 in Part I of the policy.

In November, 1989, Debra Duffield commenced an action against plaintiff seeking to review the county's denial to occupy land as a public or county road, to reform two 1921 deeds to establish a county road or to find an implied or prescriptive easement over plaintiff's property. Once again, plaintiff tendered defense to Transamerica, and Transamerica rejected the tender of defense, because all the claims

---

[2] In October, 1987, plaintiff also received a letter from an attorney for Miller who informed him that Miller asserted an easement over plaintiff's property. However, plaintiff concedes that, for purposes of this appeal, the Miller claim is identical to the Moyer claim and only addresses the Moyer claim in his brief. Accordingly, we will not discuss the Miller claim.

asserted in the Duffield action were excluded from coverage under either exclusion 3 in Part I or under exclusion 1 in Part I.

Plaintiff mounted a defense to those two actions and incurred substantial attorney fees and costs. Plaintiff then commenced this action against defendants, as well as the seller of the property, seeking to recover damages on a number of theories. Eventually, plaintiff settled with the seller, and the court granted summary judgment to defendants on all of plaintiff's claims. Plaintiff now appeals the grant of summary judgment on his claims for breach of the duty to defend, breach of escrow instructions, negligent misrepresentation and fraud.

In reviewing a grant of summary judgment, we must determine whether there is a genuine issue of material fact and whether defendants are entitled to judgment as a matter of law. *Seeborg v. General Motors Corporation*, 284 Or 695, 699, 588 P2d 1100 (1978); *Robinowitz v. Pozzi*, 127 Or App 464, 467, 872 P2d 993, *rev den* 320 Or 109 (1994).

Plaintiff first argues that the trial court erred in granting summary judgment to defendants on plaintiff's claim for breach of the duty to defend the Moyer and Duffield claims. An insurer's duty to defend under an insurance contract is broader than its obligation to pay. *Sch. Dist. No. 1 v. Mission Ins. Co.*, 58 Or App 692, 696, 650 P2d 929 (1982), *rev den* 294 Or 682 (1983). The scope of the duty to defend is determined by comparing the terms of the insurance policy with the allegations of the complaint, to determine whether the allegations of the complaint show that there is a possibility that the policy provides coverage for the claims made. *Ledford v. Gutoski*, 319 Or 397, 399, 877 P2d 80 (1994); *Ferguson v. Birmingham Fire Ins.*, 254 Or 496, 507, 460 P2d 342 (1969); *Delta Sand & Gravel Co. v. General Ins. Co.*, 111 Or App 347, 350, 826 P2d 82, *rev den* 314 Or 175 (1992). Any facts not alleged in the complaint are irrelevant in determining the existence of the duty to defend. *Ferguson v. Birmingham Fire Ins., supra*, 254 Or at 505.

■ Moyer's second amended "application for way of necessity" alleged three theories to establish an easement.[3] Plaintiff asserts that Moyer's second claim, for reformation of a deed, was based on recorded documents.[4] However, a reading of the complaint demonstrates that Moyer specifically denied any reliance on the documents to establish her easement.[5] All three of Moyer's claims were excluded from coverage under exclusion 3 in part I of schedule B as claims for easements not shown by the public record.

The Duffield complaint alleged a number of claims for relief, but they all stem from one of two theories: (1) that Duffield is entitled to travel over plaintiff's land because of an implied or prescriptive easement or (2) that Duffield is entitled to travel over plaintiff's land because of a county road, local access road or public road. The first theory, that there is an implied or prescriptive easement, is excluded from coverage under exclusion 3 in part I of schedule B as claims for easements not shown by the public record.

The second theory, that there exists a road over plaintiff's land, is specifically excluded from coverage by

---

[3] Transamerica contends that this complaint was never tendered to it for defense. However, because we are required to view the record in the light most favorable to the non-moving party, we will accept plaintiff's contention that Moyer's second amended complaint was, in fact, tendered to Transamerica for defense.

[4] Moyer's other theories were for a way of necessity and for an implied easement. Implicit in both of those theories is the premise that no recorded easement exists.

[5] Plaintiff argues that the allegations of this particular claim show that the easement claimed was based on recorded documents. Specifically, he relies on paragraphs 15 and 16 of Moyer's complaint, which provide:

"Moyer recorded a partition of Parcel I and Parcel II which shows the Logging Road as an existing road on September 22, 1986, at Film Volume 115, Page 22, Yamhill County Records.

"On February 7, 1977, Moyer sold Parcel I to Lester and Sherry Steckly (herein 'STECKLY') by Land Sale Contract. The Contract mentioned the Logging Road easement set forth in Paragraph 15 above and provided that the Stecklys would cease using the Logging Road and improve, at their own expense, and use the Creek Road when they made improvements or utilized Parcel I. A Memorandum of Contract was recorded at Film Volume 117, Page 1835 on February 5, 1977. The Memorandum mentioned the Logging Road but made no mention of the Creek Road. However, Moyer believed that these documents established legal access to Parcel I across Parcel II."

However, the same claim contains paragraph 23, which provides:

"*Because of the mistaken belief of Moyer and Riegelman that Moyer had access across [plaintiff's property]*, Plaintiff is entitled to have the Moyer-Riegelman deed reformed * * *." (Emphasis supplied.)

exclusion 1, Part II of schedule B, which provides for the exclusion of coverage for claims based on

"the rights of the public in and to that portion of the herein described property lying within the limits of streets, roads and highways."

Plaintiff argues that this exclusion is ambiguous, that he reasonably believed that it excluded from coverage only "claims for a portion of land immediately adjacent to the actual traveled portion of a public road." However, for a term in an insurance contract to be ambiguous, it must be capable of two plausible interpretations. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 470, 836 P2d 703 (1992). "It is not permissible to apply a strained meaning to unambiguous language," in order to create an ambiguity where none would otherwise exist. *Mortgage Bancorp v. New Hampshire Ins. Co.*, 67 Or App 261, 264, 677 P2d 726, *rev den* 297 P2d 339 (1984). The plain language of exclusion 1 excludes coverage for "property lying within the limits of streets, roads and highways." Duffield's action sought to establish either a "county road," a "local access road" or a "public road." In this context, there is no ambiguity and the exclusion operates to deny coverage for Duffield's claims.[6]

Neither of the complaints submitted to Transamerica show that there is a "possibility that the policy provides coverage." Accordingly, we hold that the court correctly granted summary judgment in favor of defendants on plaintiff's claims for breach of the duty to defend.

Plaintiff next argues that the court erred in granting summary judgment on his claim for breach of escrow instructions. Plaintiff makes two related arguments. First, he argues that defendants included exclusion 2 in the title insurance policy contrary to the escrow instructions, which provided that the title insurance policy should issue subject only to the listed exclusions. Second, he argues that defendants breached

---

[6] Plaintiff asserts that the road claims in the Duffield complaint are based on certain recorded deeds, conveyances and other documents of public record and, therefore, are covered by the title insurance policy. Although the claims are based on documents of public record, every claim for relief based on those documents is for either a county road, a local access road or a public road. The title insurance policy expressly excludes coverage for any claim for a road and the complaint only alleges claims for a road. Therefore, the claims are excluded from coverage.

their duty to act with neutrality by inserting that exclusion into the policy without informing plaintiff of the possible claim of easement rights.

■ Plaintiff is correct that defendants breached the escrow instructions. The title policy issued with exclusion 2 even though the escrow instructions provided that the policy should issue only with the exceptions listed on the final preliminary title report. However, that breach caused no damages; the disputed exclusion was removed from the policy and defendants never relied on that exclusion in refusing tender of defense or for any other reason.

■ Plaintiff next argues that defendants breached their escrow instructions because,

> "had plaintiff been informed of the suspected logging road easement, he could have investigated the claim and assessed its risk *prior to purchasing the property*. By refusing to disclose that information to plaintiff, defendants denied plaintiff the opportunity to discover the potential claims." (Emphasis in original.)

In essence, plaintiff's breach of escrow instructions claim, as well as his remaining claims for negligent misrepresentation and fraud, are based on a theory of failure to disclose. The only basis plaintiff alleges for this duty to disclose is defendants' role as escrow agent.

The duty of an escrow agent is to remain neutral " 'with no obligation to either party to the transaction except to carry out the terms of the escrow instructions.' " *Barr v. Pratt*, 105 Or App 220, 224, 804 P2d 496 (1991) (quoting *McDonald v. Title Ins. Co. of Oregon*, 49 Or App 1055, 1059, 621 P2d 654 (1980), *rev den* 290 Or 727 (1981)). The parties disagree as to the scope of that duty once the escrow agent discovers information that could affect the title being insured. Plaintiff argues that the duty to remain neutral implies a duty to disclose information it receives from one party to all other parties to the transaction. Defendant argues that the duty to remain neutral carries with it no obligation to disclose.

Our decision in *McDonald* provides some guidance. In that case, the plaintiffs were the buyers of a new home. They discovered that some of the subcontractors were not

being paid and were preparing to file liens against the builder/seller. The buyers informed their escrow officer, who told them not to worry, that any such proceedings would not affect them and advised them to proceed with the closing. The escrow officer was mistaken and, after the house was completed, multiple construction liens were filed against the property. The plaintiffs sued the escrow company, alleging negligence in giving bad advice. We held that any duty that the escrow agent owed the plaintiffs

> "cannot be based upon defendant's role as an escrow agent or as a provider of title insurance. An escrow holder, by definition, is a neutral party with no obligation to either party to the transaction except to carry out the terms of the escrow instructions. *They owe no duty to advise the parties on their legal rights * * * [and t]hey have no reason to protect the rights of any one party against another.' State Bar v. Security Escrows, Inc.*, 233 Or 80, 82, 377 P2d 334 (1962)." *McDonald v. Title Ins. Co. of Oregon, supra*, 49 Or App at 1059. (Emphasis supplied.)

Although plaintiff "vehemently disagrees" that defendants acted with neutrality in this case and asserts that defendants had a duty to disclose the existence of a possible claim, we find no such duty. Defendants' actions in adding exclusion 2 did nothing to further either the seller's or the buyer's interest; it only served to further the title insurer's interest. Although this action constituted a breach of the escrow instructions, it was cured upon removal of the exclusion from the policy. Without an obligation to disclose, defendants did not breach any further duty.

Plaintiff argues that, nonetheless, "a purchaser is not required to accept title which might reasonably be expected to involve litigation." *Cameron v. Benson*, 57 Or App 169, 172, 643 P2d 1360 (1982), *rev'd on other grounds* 295 Or 98, 664 P2d 412 (1983). Although that is true as a general proposition, the statement in *Cameron* was made in the context of a dispute between the buyer and the seller of the property.[7] Plaintiff here has settled with the seller of the property; the only remaining question is whether the escrow

---

[7] An escrow agent was involved in *Cameron v. Benson, supra*, 57 Or App at 172; however, the statement on which plaintiff relies was made in the context of a dispute between only the buyer and seller.

agent should be held liable, and we have already disposed of that argument.

 Plaintiff next argues that the court erred in granting summary judgment on his claim for negligent misrepresentation. Assuming, without deciding, that the tort is available in this situation,[8] defendants must have made some misrepresentation for any liability to exist. Plaintiff argues that defendant's "failure to disclose the partitioning approval on a preliminary title report" misrepresented the state of the title. However, plaintiff alleges in his fourth amended complaint that defendants agreed to disclose to plaintiff all liens and encumbrances *of record* against the property. The partitioning approval is not a lien or encumbrance of record; it did not purport to create an easement nor any other encumbrance.[9] Plaintiff has not demonstrated any misrepresentation concerning the partitioning approval. All of the claims later asserted against plaintiff, *i.e.*, the Moyer and Duffield complaints, were not based, nor could they have been based, on the document that defendant did not disclose to plaintiff. There was no misrepresentation and, therefore, the trial court did not err in granting summary judgment on plaintiff's claim for negligent misrepresentation.

Finally, plaintiff asserts that the court erred in granting summary judgment on his claim for fraud.[10]

---

[8] That theory is available for the recovery of purely economic loss when there is a special relationship between the parties. *See Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159, 843 P2d 890 (1992); *Ammons v. Jackson County*, 119 Or App 181, 184, 850 P2d 376, *rev den* 318 Or 24 (1993). Plaintiff alleges that such a relationship exists here between him and defendants. *But see Lindstrand v. Transamerica Title Ins. Co.*, 127 Or App 693, 874 P2d 82 (1994); *Ivy v. Transamerica Title Ins. Co.*, 90 Or App 511, 752 P2d 1269, *rev den* 306 Or 195 (1988); *McDonald v. Title Ins. Co. of Oregon, supra*. In each of those cases, a claim for negligent misrepresentation was allowed to proceed against an escrow company/title insurer. However, the special relationship was based on the escrow company/title insurance company's volunteering additional information beyond what was required by the contract for title insurance.

[9] The partitioning approval is a document created in 1976 by R.S. Moyer, the then owner of property, and approved on September 27, 1976, by Yamhill County. It partitioned one large parcel of property into three smaller parcels two of which are the properties purchased by plaintiff. The bulk of the one page document is a map of the property with proposed property lines. Included on the map is a hand-drawn road, crossing one of the properties purchased by plaintiff. An arrow points to the road and, at the other end of the arrow, a legend reads, "existing logging road (easement to be provided)."

[10] Plaintiff actually entitles his claim as one for "bad faith/fraud." However, the

Although not explicit in his brief, plaintiff advances two different theories to support his fraud claim; we will address each of his arguments in turn.

██ ██ First, plaintiff argues that defendants committed fraud by failing to disclose the existence of the partitioning approval that led defendants to include exclusion 2 in the title insurance policy. For non-disclosure to form the basis of a fraud claim, defendant must be under a duty to disclose. *See U.S. National Bank v. Fought*, 291 Or 201, 630 P2d 337 (1981); *Restatement (Second) of Torts* § 551 (1976). As discussed above, defendants had no duty to disclose and, accordingly, defendants are not liable for fraud under this theory. Plaintiff asserts that escrow agents have a duty to disclose because the parties are in a fiduciary relationship, and relies on *Gardner v. First Escrow Corp.*, 72 Or App 715, 696 P2d 1172, *rev den* 299 Or 314 (1985). However, in *Gardner*, the defendant escrow company "[did] not deny that a fiduciary relationship existed" between the parties. 72 Or App at 720. In addition, the evidence in *Gardner* revealed that the escrow company was not qualified to perform escrow services and that the escrow company and the defendant seller shared offices, personnel and information. Those facts and the lack of the denial served as the basis for the finding that the buyer and escrow agent were in a fiduciary relationship. 72 Or App at 719-20. In the absence of such facts, a duty to disclose cannot be imposed on an escrow agent:

> "Although plaintiffs claim that the parties were engaged in a relationship of a fiduciary nature, the existence of a duty cannot be based upon defendant's role as an escrow agent." *McDonald v. Title Ins. Co. of Oregon, supra*, 49 Or App at 1059.

In this case, defendants deny that any fiduciary relationship exists and no facts exist on this record to show the creation of such a relationship.

██ Second, plaintiff argues that defendants committed fraud by actively concealing the existence of the partitioning approval. The only actions that plaintiff identifies as the

complaint reveals that the bad faith claim was directed at the seller, not the defendants still left on appeal. Consequently, we address plaintiff's arguments regarding fraud.

active concealment were defendants' statements about the nature of the partitioning approval claim to him. However, the affidavits submitted in support of summary judgment indicate that any "representation" made to plaintiff occurred *after* the transaction closed on September 11, 1987. Plaintiff's affidavit states:

> "In or about October, 1987, Ms. Carlacio and I received a letter dated October 8, 1987, from an attorney named Tom Davis, who represented a Harold Miller. * * * This correspondence was the first notice that either I or Ms. Carlacio had relative to an easement claim or potential easement claim across the property we had recently purchased. * * * *At this time, that is October, 1987, neither I nor Ms. Carlacio had any information or knowledge that defendant [Yamhill] knew anything about an easement being claimed over the property prior to closing.*" (Emphasis supplied.)

Therefore, the only damage that plaintiff alleges, *i.e.*, that he was denied the opportunity to investigate the alleged easements prior to closure, occurred *before* the alleged act of concealment. Accordingly, plaintiff has not stated a claim for fraud, and the trial court correctly granted summary judgment for defendants.

Affirmed.