Argued and submitted October 26, 1995, affirmed March 27, 1996

## ALLSTATE INSURANCE COMPANY,
*Appellant,*

*v.*

## TENANT SCREENING SERVICES, INCORPORATED,
a Washington corporation,
*Respondent.*

### (9307-04525; CA A85673)

914 P2d 16

Jeffrey D. Eberhard argued the cause for appellant. With him on the briefs was Smith, Freed, Heald & Chock, P.C.

Michael A. Lehner argued the cause for respondent. With him on the brief was Lehner, Mitchell, Rodrigues & Sears.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

Plaintiff appeals from a judgment dismissing its complaint for failure to allege ultimate facts sufficient to constitute claims for negligent misrepresentation, contribution, and indemnity against defendant. ORCP 21 A(8). We affirm.

We state the facts as alleged in the complaint. *McAlpine v. Multnomah County*, 131 Or App 136, 883 P2d 869, *rev den* 320 Or 507 (1995). Plaintiff insured McLeod, the owner of the Rockwood Apartments, under a commercial comprehensive liability insurance policy. Defendant is a "licensed screening and reporting service specializing in tenant history information." Defendant represented to McLeod or his agents that, in preparing its background reports on prospective tenants, it searched criminal court records. As a result of that representation, McLeod entered into a contract with defendant. The contract, which plaintiff attached to its complaint, stated that defendant was to provide the background information "for the purpose of evaluating credit, character, employment, and/or mode of living of applicant[s]."

After entering into the contract with defendant, McLeod requested a background check on Taylor. Defendant reported that Taylor's criminal record was "clear." However, Taylor had a history of criminal charges and convictions, including a conviction for disorderly and offensive conduct. Based on the background report prepared by defendant, McLeod agreed to rent an apartment to Taylor. A tenant's ("K") complaint against McLeod, which is also attached to plaintiff's complaint, alleged that McLeod made Taylor a security guard at the apartment complex and told K that Taylor would protect her. On October 22, 1991, K allowed Taylor into her apartment, where he sodomized and sexually abused her.

K brought a negligence action against McLeod, alleging, *inter alia*, that McLeod was negligent "in asking [Taylor] to act as a security guard" and "to watch over [her]" without checking his references or conducting a background investigation on him. Plaintiff assumed McLeod's defense

and settled with K for $240,000. Plaintiff, subrogated to the rights of McLeod, then filed an action against defendant.

In its third amended complaint,[1] plaintiff alleged a claim for negligent misrepresentation, contribution, and indemnity against defendant. Under the negligent misrepresentation claim, plaintiff sought to recover the economic losses incurred by McLeod in settling with K. Plaintiff alleged that defendant was negligent in:

"A.   Representing that [defendant] obtained information on criminal charges for the State of California when [defendant] knew or should have known that this representation was false and misleading.

"B.   Representing to McLeod's agents that Taylor had a 'clear' criminal record when [defendant] knew or should have known that this misrepresentation was false and misleading."[2]

Under the contribution claim, plaintiff sought to recover from defendant to the extent that McLeod settled with K for more than his proportionate share. Plaintiff based its right to contribution on the alleged negligence of defendant toward K. Plaintiff asserted that defendant was liable to K in one or more of the following particulars:

"A.   By representing to [K]'s landlord that [defendant] obtained information of criminal charges for the state of California when [defendant] knew or should have known that this representation was false and misleading.

"B.   By representing to [K]'s landlord that [Taylor] had a 'clear' criminal record when [defendant] knew or should have known that this representation was false and misleading.

---

[1] Plaintiff's third amended complaint is the relevant pleading here. Plaintiff filed its first and second amended complaints in response to defendant's successful Rule 21 motions. The trial court's rulings on those previous motions are not at issue.

[2] Plaintiff did not plead a claim for breach of contract. Defendant did not argue to the trial court or to us that plaintiff is limited to a contract action. Consequently, for the purpose of addressing the issues raised here, we assume, without deciding, that an action for negligent misrepresentation could arise out of the facts of this case.

"C. In failing to exercise reasonable care when conducting the investigation into the criminal record of [Taylor] by checking the county of his prior residence."

Defendant moved to dismiss plaintiff's contribution claim under ORCP 21 A(8). Defendant asserted that, under *Miller v. City of Portland*, 288 Or 271, 604 P2d 1261 (1980), plaintiff could obtain contribution from it only if K could have recovered against it for the same cause of action. Defendant then argued that plaintiff had failed to plead facts sufficient to constitute a claim for negligent misrepresentation on behalf of K. In particular, defendant argued that plaintiff had not pleaded facts that, if proved, would establish legal or proximate causation, *i.e.*, that K's injuries were a foreseeable consequence of its allegedly negligent misrepresentations.[3] Defendant also moved, in the alternative, for an order requiring plaintiff to make more definite and certain the nature of Taylor's criminal charges and convictions. The trial court granted defendant's motion to dismiss:

"[W]ithout ultimate facts showing that [defendant] should have reason to know [Taylor] would commit a crime of violence * * * the harm that befell is beyond the scope of the risk created by the negligence.

"There would have to be the allegation [defendant] knew or should have known that [Taylor] was the type of person that created a risk that he would commit some sort of assaultive conduct against another tenant. There aren't ultimate facts stated here that would show that. So I am granting defendant's * * * motion."

The trial court also denied plaintiff leave to replead. Before making that ruling, the following colloquy occurred:

"THE COURT: You [plaintiff's counsel] got anything more you could allege?

"[Plaintiff's counsel]: The only additional thing I could allege is the crime he was actually convicted of down in California. I believe it was entitled violent disorderly offensive conduct. That's what the phrase was. I can't recall. And that

---

[3] To the trial court and to us, the parties have referred to foreseeability of the risk of harm as "legal" or "proximate cause." However, the Supreme Court has abandoned that nomenclature in reference to the elements of the tort of negligence. *Stewart v. Jefferson Plywood Co.*, 255 Or 603, 469 P2d 783 (1970).

would be—the only additional thing is the actual title of the offense he was convicted of may have—would have the word violent—may have the word violent. I could call the Court and advise the actual title of it if that makes a difference. That would be the only additional thing we could add.

"THE COURT:   I'm not inclined to allow you to replead if all you can add is the word violent without more because violent, disorderly just doesn't—

"* * * * *

"THE COURT:   Again that could be barroom brawl, probably was.

"* * * * *

"THE COURT:   The motion is granted then without leave to replead."

Defendant then moved to dismiss plaintiff's remaining negligent misrepresentation claim and the indemnity claim on the same basis asserted in its motion against plaintiff's contribution claim. Plaintiff agreed to waive any objections to the timeliness of defendant's motion. Additionally, both parties stipulated that plaintiff could submit the following allegation further clarifying the nature of Taylor's criminal convictions:

"In May 1991, just five (5) months before sexually assaulting [K], [Taylor] plead [sic] guilty in Kern County, California to a PC415, for 'fight/noise/offensive words.' In September 1991, less than one (1) month before sexually assaulting [K], [Taylor] was convicted of petty theft. If Allstate's insured was aware of these criminal charges and convictions, they would not have rented an apartment to him, nor considered hiring him as an assistant manager."

The trial court granted defendant's motion, stating:

"The proposed or stipulated amendment specifying and clarifying the information about [Taylor's] prior convictions I don't think changes the previous analysis and I am granting defendant's motion."

Plaintiff first assigns error to the trial court's dismissal of its claim for negligent misrepresentation to recover the economic losses sustained by McLeod in settling with K. Plaintiff asserts that it properly pleaded a claim for negligent

misrepresentation. In particular, plaintiff argues that it is not necessary to plead facts showing that the risk of harm was a reasonably foreseeable consequence of defendant's alleged misrepresentations. Alternatively, plaintiff argues that it did plead facts showing that the risk of harm that befell McLeod was a foreseeable result of defendant's misrepresentations. Defendant argues that plaintiff must plead facts showing that the risk of harm was reasonably foreseeable and that it failed to do so.[4]

■      We first consider whether a plaintiff seeking economic losses must allege foreseeability of the risk of harm to properly plead a claim for negligent misrepresentation. The Supreme Court first recognized the tort of negligent misrepresentation to recover economic losses in *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 843 P2d 890 (1992). In that case, the court concluded that "under some circumstances, one may be liable for economic loss sustained by others who rely on one's misrepresentations negligently made." *Id.* at 159. However, in determining the elements of the tort of negligent misrepresentation, the court declined to adopt the rule stated in *Restatement (Second) of Torts* § 552 (1965).[5] Instead, the court stated:

---

[4] Defendant also presents two additional arguments. First, it argues that the scope of its duty is limited, or, more accurately, eviscerated by a contractual provision that states:

"[Defendant] attempts to gather accurate and reliable information but does not guarantee the correctness, currency or completeness of such information."

Second, defendant argues that plaintiff's negligent misrepresentation claim to recover McLeod's economic losses is actually a defectively pleaded contribution claim. Defendant failed to present either argument to the trial court, and we will not address them for the first time on appeal.

[5] *Restatement (Second) of Torts* § 552 (1965) provides:

"(1)  One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

"(2)  Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

"(a)  by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

"The rule stated in Restatement (Second) of Torts § 552 * * * is close to the mark. But, for the reasons that follow, rather than adopting the black letter 'rule,' we opt to develop the scope of the duty and the scope of recovery on a case-by-case basis, in light of related decisions of this court." *Id.* at 159.

The court then discussed situations in which a duty of care may arise. The court stated that a duty "must be predicated on some duty of the negligent actor to the injured party beyond the common law duty to exercise reasonable care to prevent foreseeable harm." *Id.* at 159. The court concluded that such a duty exists only in such relationships like the attorney-client, architect-client, and agent-principal relationships, where "the professional who owes a duty of care is, at least in part, acting to further the economic interests of the 'client.' " *Id.* at 161. Because the court determined that the relationship before it did not give rise to a duty of care, it had no occasion to discuss any other elements of the tort of negligent misrepresentation.[6] The parties here have not cited, and our research has not disclosed any, Oregon cases discussing elements of negligent misrepresentation other than the duty element.[7]

Plaintiff argues that, because, based on *Onita*, it pleaded facts establishing a special relationship, it is not required to plead facts showing that the risk of the harm was a reasonably foreseeable consequence of defendant's alleged misrepresentations. Plaintiff asserts that, under *Onita*, a duty of care for the tort of negligent misrepresentation to recover economic losses arises only when a special status or relationship exists between a plaintiff and a tortfeasor. Plaintiff further asserts that *Fazzolari v. Portland School*

---

"(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

"(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them."

[6] Defendant, here, does not argue that it owed no duty of care toward plaintiff.

[7] *See Meininger v. Henris Roofing & Supply*, 137 Or App 451, 905 P2d 861 (1995), *rev den* 322 Or 489 (1996); *Gebrayel v. Transamerica Title Ins. Co.*, 132 Or App 271, 888 P2d 83, *rev den* 321 Or 47 (1995); *Conway v. Pacific University*, 129 Or App 307, 879 P2d 201, *rev allowed* 320 Or 272 (1994).

*Dist. No. 1J*, 303 Or 1, 734 P2d 1326 (1987), stands for the proposition "that * * * general foreseeability principles * * * do not come into play where a recognized status exists between the parties." Plaintiff contends that the trial court here found, as a matter of law, that a special relationship existed between McLeod and defendant as a nongratuitous supplier of information.[8] *See Onita,* 315 Or at 165; *Lindstrand v. Transamerica Title Ins. Co.,* 127 Or App 693, 874 P2d 82 (1994). Thus, plaintiff reasons that here, as in any case, where a plaintiff has pleaded facts showing that a special relationship exists between the plaintiff and the tortfeasor, there is no need to plead facts showing that the risk of harm was foreseeable. Instead, plaintiff argues that it need only plead reliance on defendant's misrepresentation.

Plaintiff's argument ignores the distinction between the *existence* of a duty of care and the *scope* of a duty of care. *Onita* sets forth the circumstances under which a duty to avoid negligent misrepresentations that cause economic losses comes into existence. There, the Supreme Court provided that such a duty exists only when the defendant and the plaintiff are in a particular relationship. *Onita,* 315 Or at 159-65. *Onita,* however, provides no guidance as to the scope of the duty but, instead, authorizes courts to "develop the scope of the duty * * * on a case-by-case basis." *Id.*

*Fazzolari* provides insight into the relationship between foreseeability and the scope of a duty of care. There, the Supreme Court stated:

_____

[8] Our review of the record discloses that the trial court made no such finding. The only discussion concerning the existence of a duty of care occurred during the oral argument on defendant's Rule 21 motion against plaintiff's contribution claim. However, consistent with *Miller v. City of Portland*, 288 Or 271, 604 P2d 1261 (1980), the focus of discussion was whether plaintiff pleaded facts showing that defendant owed a duty of care to *K*, the victim of Taylor's sexual abuse, not McLeod. *McLeod's* ability to recover his economic losses for defendant's allegedly negligent misrepresentations was the subject of defendant's subsequent rule 21 motion. However, the trial court decided that motion on foreseeability of harm grounds and made no findings regarding the existence of a special relationship between defendant and McLeod. Nonetheless, because defendant does not challenge plaintiff's claim that such a relationship exists, we assume, for the sake of argument, that plaintiff pleaded facts showing a special relationship between defendant and McLeod.

"[U]nless the parties invoke a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty, the issue of liability for harm actually resulting from defendant's conduct properly depends on whether that conduct unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff." 303 Or at 17.

Under *Fazzolari* a duty of care may not only be created, but may also be *defined* or *limited* by: (1) a particular relationship, status, or standard of conduct *or* (2) the general concept of foreseeability of the risk of harm. Under that formulation, if no special relationship exists, the scope of the duty of care is limited by the concept of foreseeability. The plaintiff must avoid creating unreasonable risks of foreseeable harms to foreseeable plaintiffs. *Fuhrer v. Gearhart By The Sea, Inc.*, 306 Or 434, 437, 760 P2d 874 (1988). Conversely, when a special relationship or status gives rise to the duty of care, that relationship or status *may* also define the scope of the duty by specifically describing the types of harms or class of persons that it encompasses. *See, e.g., Thompson v. Klimp*, 101 Or App 127, 789 P2d 696 (1990) (scope of duty with respect to premises liability). In those cases where the special relationship does not prescribe the scope of the duty, "[c]ommon law principles of reasonable care and foreseeability of harm are relevant." *Cain v. Rijkin*, 300 Or 706, 717, 717 P2d 140 (1986) (cited with approval in *Fazzolari*, 303 Or at 16-17); *see also, Buchler v. Oregon Corrections Div.*, 316 Or 499, 853 P2d 798 (1993); *Fuhrer*, 306 Or at 438-42.

Here, plaintiff asserts that principles of foreseeability "do not come into play." Plaintiff posits, at least implicitly, that defendant, as a commercial supplier of information, should be liable for any and all harms related, no matter how remotely, to its inadequate investigation and disclosure of such information. However, plaintiff does not explain how or why the scope of the duty associated with the purported special relationship between defendant and McLeod should be defined so broadly rather than by reference to principles of foreseeability. Nor do we discern any basis in the particular relationship between defendant, as a commercial vender of information, and McLeod, as a commercial consumer of such

information, that supports such sweeping liability. Consistent with *Onita*'s mandate to decide the scope of the duty of care on a case-by-case basis, we conclude that defendant's duty, and hence its liability, does not extend beyond harms that are a foreseeable result of its alleged unreasonable misrepresentations.

■ We next consider whether plaintiff pleaded facts, which, if proved, show that the risk of harm to McLeod was a reasonably foreseeable consequence of defendant's alleged misrepresentations. The harm suffered by McLeod was his settlement with K for $240,000. The immediate cause of the risk of that harm was Taylor's sexual attack on K. Defendant argues that, under *Buchler*, plaintiff failed to plead facts showing that Taylor's attack on K was a reasonably foreseeable consequence of its alleged misrepresentations.

In *Buchler*, an inmate on a work crew at a forest camp escaped in a van in which the ignition keys had been left by a corrections officer. Two days later the inmate shot two people, killing one. The plaintiffs alleged, *inter alia*, that the defendant was negligent in allowing the prisoner to escape. The Supreme Court first concluded that, with respect to that specification of negligence, the defendant's special status as a jailor gave rise to a duty of care toward the plaintiffs. However, the court ultimately concluded that the harm suffered by the plaintiffs was not reasonably foreseeable:

> "It is not possible for a reasonable person to find from this record that a custodian would have known that this particular prisoner was 'likely to cause bodily harm' of the kind that befell plaintiffs two days after his escape. The tragic death and injuries were not legally foreseeable results of this particular prisoner's escape. They are not risks unreasonably created by that escape, nor did they occur because of violation by defendant of any duty arising out of any special relationship between the plaintiffs and the defendant or defendant's status as the prisoner's jailer." 316 Or at 507.

Consistent with *Buchler*, we conclude that plaintiff failed to allege facts showing that Taylor's sexual attack on K was a reasonably foreseeable consequence of defendant's alleged negligent misrepresentation that Taylor had a clear criminal record. That is so for two reasons. First, although it

may be generally foreseeable that criminals will commit crimes, nothing in Taylor's criminal record, as set forth in plaintiff's third amended complaint and the stipulated amendment, foreshadowed his particular crimes against K. Plaintiff did not plead facts showing that Taylor had been convicted of any sexual offenses. The fact that he had been convicted of petty theft and "fight/noise/offensive words" could suggest aggressive conduct but does not suggest an inclination to commit the serious sexual crimes of sodomy and sexual abuse.

Second, the pleadings disclose that, although defendant provided the information regarding Taylor for *tenant* screening purposes, McLeod, relying on that information, made Taylor a *security guard*, and it was in the latter capacity that Taylor came into contact with, and assaulted, K. In particular, plaintiff alleged that defendant provided the erroneous information as a "screening and reporting service specializing in tenant history information," for the purpose of "evaluating credit, character, employment, and/or mode of living" of the prospective tenant. Conversely, K's complaint, which is attached to plaintiff's complaint, alleges that she was attacked after McLeod, relying on defendant's report and without checking references or conducting an independent background check, made Taylor a security guard and asked him to watch over her. Plaintiff failed to plead facts showing that it should have been reasonably foreseeable to a party in defendant's position that a landlord would use tenant screening information in hiring a security guard. Thus, the trial court properly dismissed plaintiff's negligent misrepresentation claim to recover McLeod's economic losses.

■ In its second assignment of error, plaintiff asserts that the trial court erred in dismissing its contribution and common law indemnity claims. The contribution claim is also based on defendant's alleged negligent misrepresentations about Taylor's criminal record. However, under *Miller v. City of Portland*, 288 Or 271, 604 P2d 1261 (1980), that claim must be analyzed from K's perspective. Defendant disputes the existence of a duty of care between itself and K. Assuming that such a duty exists, plaintiff's contribution claim fails for the same reasons that its other negligent misrepresentation

claim fails. As amplified above, the trial court properly dismissed the contribution claim, because plaintiff failed to plead facts from which jurors could conclude that K's injuries were reasonably foreseeable. Plaintiff's common law indemnity claim was predicated on defendant's alleged negligence. Consequently, the trial court properly dismissed that claim as well.

Affirmed.