Argued and submitted January 4, reversed and remanded May 4, 1994

A. E. "Bud" LINDSTRAND
and Roxanne Lindstrand,
husband and wife,
*Appellants,*

*v.*

TRANSAMERICA TITLE
INSURANCE COMPANY,
a California corporation,
*Respondent.*

(C920850CV; CA A80362)

874 P2d 82

Mark A. Turner argued the cause for appellants. With him on the briefs was Ater, Wynne, Hewitt, Dodson & Skerritt.

Jonathan M. Radmacher argued the cause for respondent. On the brief were Janice M. Stewart and McEwen, Gisvold, Rankin & Stewart.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

■■     Plaintiffs appeal from a judgment entered after the trial court granted a directed verdict in defendant's favor at the close of the evidence. ORCP 60. They assign error to the granting of the directed verdict. In reviewing a directed verdict, we view the evidence in the light most favorable to the non-moving party and extend to that party the benefit of every reasonable inference that may be drawn from the evidence. *Shockey v. City of Portland*, 313 Or 414, 837 P2d 505 (1992), *cert den* ____ US ____, 113 S Ct 1813, 123 L Ed 2d 444 (1993). The directed verdict was appropriate only if defendant was entitled to judgment as a matter of law. We reverse.

The evidentiary record shows that plaintiffs are the owners of a residential lot in Washington County on which they built a house. Defendant is an escrow company. In August, 1989, plaintiffs signed an earnest money agreement for the purchase of the lot. The earnest money agreement contained an addendum providing that

"7)   This lot has a height limitation [for structures] of 948' above sea level. This is in the form of a deed restriction."

At the time plaintiffs signed the earnest money agreement, the applicable height restriction was 954 feet above sea level. That restriction was recorded in May, 1989.

After the earnest money agreement was signed, defendant prepared and sent to plaintiffs a preliminary title report. The report listed a number of exceptions to the title, including the May, 1989, restriction:

"17.   Covenants, easements and restrictions, but omitting restrictions, if any, based on race, color, religion or national origin, imposed by instrument, including the terms thereof,
Recorded                 :   May 19, 1989
Recorder's Fee No.   :   89-22638"

Defendant subsequently issued a "supplemental preliminary title report," after two additional documents were recorded that affected the title to the lot. That report included

"19.   Restrictive Covenant and View Easement, but omitting restrictions, if any, based on race, color, religion [or] national origin, including terms and provisions thereof,
Recorded                 :   September 18, 1989
Recorder's Fee No.   :   89-44138"

Although plaintiffs received and read both title reports, they did not ask defendant any questions about them and did not request copies of the referenced documents. In fact, the September, 1989, restrictive covenant contained a new height restriction, which provided that

> "[t]he height of any structure * * * on [plaintiffs' lot] shall not exceed 2 feet above the curb height at the easterly common corner of Lots 66 and 67."

That height restriction is equivalent to 948 feet above sea level.

In October, 1989, plaintiffs met with an escrow officer of defendant to conclude the purchase. At that time, plaintiffs signed documents authorizing disbursement of funds from the transaction. Also during this meeting, defendant's escrow officer asked plaintiffs if they were aware that there was a height restriction regarding structures on the lot and gave plaintiffs a copy of the May, 1989, restrictive covenant, which had been superseded by the September, 1989, restriction.

Plaintiffs proceeded to build their house. They instructed their builder to construct the house based on the 954 foot height restriction. After the roof line was constructed, plaintiffs discovered that the lower height restriction was in effect and that their present roof line exceeded the applicable restriction by approximately six feet. Plaintiffs brought this action, alleging that defendant was negligent in providing them with information about the wrong restriction at closing. They sought damages for the costs of construction to bring their house into conformity with the applicable restriction and for costs of litigation incurred in response to the enforcement of the restriction by the neighbors. At the close of the evidence, the trial court granted defendant's motion for a directed verdict. It reasoned that defendant could only be liable for giving "advice," and that defendant's statement and act of giving plaintiffs a copy of the May, 1989, restriction did not constitute the giving of advice.[1]

---

[1] This colloquy occurred between the court and plaintiffs' attorney:

"[PLAINTIFFS' ATTORNEY]: Just so I'm clear on the basis, the holding of the court is that even under the facts in a situation in which the title company provides the document to my clients, there is no duty of due care on the part of

The only damages alleged in plaintiffs' complaint are "economic losses" as defined in *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 159 n 6, 843 P2d 890 (1992):

"[W]e use the term 'economic losses' to describe financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages for injury to person or property."

Consequently, their negligence claim must be predicated on a duty owed to them beyond the common law duty to exercise reasonable care to prevent foreseeable harm. *Hale v. Groce*, 304 Or 281, 289, 744 P2d 1289 (1987).

■ In that light, the first inquiry is whether defendant could owe plaintiffs a duty to provide an accurate document regarding the restriction. In *Onita Pacific Corp. v. Trustees of Bronson, supra*, 315 Or at 165, the court said that

"nongratuitous suppliers of information owe a duty to their clients or employers or to intended third-party beneficiaries of their contractual, professional, or employment relationship to exercise reasonable care to avoid misrepresenting facts."

*Restatement (Second) of Torts*, § 552 *comment d* (1977) states:

"The fact that the information is given in the course of the defendant's business, profession or employment is a sufficient indication that he has a pecuniary interest in it, even though he receives no consideration for it at the time. It is not, however, conclusive. But when one who is engaged in a

the title company to ensure that they provide them with the correct and applicable document at that time.

"COURT: That's right. I'm assuming for the sake of argument that the evidence is 'Oh, by the way, there is a height restriction. Here's a copy of it.' That's right. And along with that there is a title report and a supplemental report that indicates quite clearly there were documents recorded afterwards: in other words, this later in September of '89 document.

"'* * * * *

"COURT: To try to be as clear as I can, my sense of it is, for you to make out a case against the title company you've got to make out a case under *McDonald vs. [sic] Title Insurance [Co.] of Oregon[*, 49 Or App 1055, 621 P2d 654 (1980), *rev den* 290 Or 727 (1981),] and you haven't done that.

"[PLAINTIFFS' ATTORNEY]: That the giving of this information does not constitute the giving of advice?

"COURT: That's right."

business or profession steps entirely outside of it, as when an attorney gives a casual and offhand opinion on a point of law to a friend who he meets on the street, or what is commonly called a 'curbstone opinion,' it is not to be regarded as given in the course of his business or profession; and since he has no other interest in it, it is considered purely gratuitous."

Moreover, in *McDonald v. Title Insurance Co. of Oregon, supra* n 1, we held that, although an escrow holder owes no duty to advise the parties on their legal rights and an escrow holder is not required to protect the rights of any one party as against another, it can assume a duty to exercise due care when it volunteers advice. Our holding in *Ivy v. Transamerica Title Insurance Co.*, 90 Or App 511, 752 P2d 1269, *rev den* 306 Or 195 (1988), was a logical extension of the holding in *McDonald*.[2] There, the defendant escrow agent undertook extra-contractually to provide the legal description of the subject property to be used in the deed and mortgage. The legal description provided by the defendant was incorrect. Those precedents and the legal rules they express establish the framework for the imposition of a duty beyond that contemplated by the common law, if defendant was a nongratuitous supplier of information.

We conclude that there is evidence that defendant was a nongratuitous supplier of information to plaintiffs. This is not a situation in which defendant stepped entirely outside the scope of its business when it supplied the information. Defendant prepared and provided the preliminary title reports to plaintiffs. Although defendant was under no obligation to discuss or provide information to plaintiffs concerning specific restrictions in the title report, it elected to do so at the time of the closing of the escrow. The jury could find that defendant supplied the document about the restriction as an adjunct to the performance of its other duties. If that is so, it had a duty to exercise due care in providing the restriction.

Because a trier of fact could determine from the evidence that the supplying of the document was a part of the relationship between the escrow company and its client under these circumstances, the trial court erred in granting a directed verdict. Whether plaintiffs were justified in relying

---

[2] *Ivy v. Transamerica Title Insurance Co., supra*, was decided under a "foreseeability" analysis.

on that document is also a question of fact. Consequently, the trial court erred in granting the directed verdict.

Reversed and remanded.