Argued and submitted February 9, reversed and remanded with instructions
September 22, 1999

David M. BOWLES,
assignee of Bowles Corporation,
an Oregon corporation,
*Respondent,*

*v.*

KEY TITLE COMPANY,
an Oregon corporation,
*Appellant.*

(961675; CA A100370)

986 P2d 1236

Jonathan M. Radmacher argued the cause for appellant. With him on the briefs was McEwen, Gisvold, Rankin, Carter & Streinz, LLP.

Douglas B. Gordon argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Deits, Chief Judge, and Wollheim, Judge.

DEITS, C. J.

**DEITS, C. J.**

Defendant Key Title Company appeals from the judgment for plaintiff Bowles[1] on his claims for negligence and breach of contract in this action arising out of defendant's services as an escrow agent for plaintiff. We reverse.

In early 1994, plaintiff entered into an agreement with the Estate of T. J. Starker to purchase a 122-acre parcel on which plaintiff planned to build a residential development. Plaintiff was not satisfied with the existing alternatives for road access to the property. Consequently, with the aid of the Starker estate's real estate agent, Bob Myers, plaintiff located a small parcel, owned by Robert and Janna Anderson, that could provide access to a roadway bordering the Starker property.

An employee of plaintiff prepared a letter of intent whereby, for $500 consideration, the Andersons would grant plaintiff an option to purchase their property for $65,000. The letter further provided, in relevant part:

> "Upon mutual acceptance of this Letter, BOWLES agrees to deliver to KEY TITLE & ESCROW COMPANY ("Escrow") * * * within fifteen (15) days from the date of ANDERSON'S execution of this Letter, an executed Option Agreement together with the consideration for such option. Escrow is authorized and instructed to deliver such consideration to ANDERSON upon ANDERSON'S execution of said Option Agreement in recordable form."

Plaintiff signed the letter before it was sent to the Andersons, and they signed it on March 7, 1994. However, Myers, acting as the Andersons' agent, did not deliver the letter to defendant until March 14. The document was accompanied by defendant's standard form "Document Receipt and Instructions," which contained, *inter alia*, Myers's handwritten notation "Please prepare option: Stevens-Ness option for recording." Defendant's escrow officer, Barbara Bass, apprised Myers that she could not prepare the agreement,

---

[1] Bowles is the principal of and, for purposes of this case, the assignee of Bowles Corporation. We will generally refer to Bowles personally as both the plaintiff in the action and the party to the transactions that are relevant here.

but that, if Myers provided the necessary information, she would type it onto the preprinted form. Bass testified that she received the information after March 25; Myers testified that he had provided her with the information before that date.

On March 25, a Friday, the Andersons came to defendant's office. Although more than 15 days had passed since they had signed the letter of intent, neither the $500 consideration nor an option agreement prepared for their signatures awaited them there. During the time the Andersons were at her office and later in the day, Bass attempted to contact plaintiff's and Myers's offices by telephone, but received no responses from anyone with authority to take relevant action. Mr. Anderson testified that he then told Bass, "since there was no money and no paperwork ready * * * the deal was off." At the Andersons' request, Bass prepared a memorandum, dated March 25, that stated:

> "[A]s of this date escrow is not received, funds or instructions completed to release $500 to sellers herein."

Bass did not transmit a copy of the memorandum to plaintiff and did not tell him about the episode. Her reason for not doing so was that the Andersons had not asked her to do so. However, on the following Monday, she did inform Myers about Friday's events. At his direction, Bass completed a form of option agreement and other documents and transmitted them to plaintiff. Plaintiff signed the agreement and delivered it, a $500 check and escrow instructions to Bass, with the following cover letter dated March 28:

> "In connection with the above captioned escrow we enclose the following:
>
> "1. Our check No. 6357 payable to your order in the sum of $500.00: option payment: and
>
> "2. Escrow Instructions executed by David M. Bowles as President of Bowles Corporation: and
>
> "3. Stevens Ness Form 'Option for Purchase of Real Estate' executed by David M. Bowles as President of Bowles Corporation and acknowledged.
>
> "This option agreement is **to be recorded** upon execution by the Andersons and your acknowledgment. Please

have the original returned to our office." (Boldface in original.)

The escrow instructions that plaintiff enclosed stated:

"The undersigned hands you herewith, the sum of $500.00 which Key can deliver to Robert C. Anderson and Janna M. Anderson when Key holds an Option to Purchase in favor of the undersigned, which Key is to prepare using Stevens Ness form no. 14 in accordance with the letter of Intent of Option to Purchase.

"IT IS UNDERSTOOD BY THE PARTIES SIGNING THE ABOVE INSTRUCTIONS THAT THESE INSTRUCTIONS ARE THE COMPLETE INSTRUCTIONS BETWEEN KEY, AS THE ESCROW AGENT AND THE UNDERSIGNED PRINCIPALS TO THIS ESCROWED TRANSACTION. THESE INSTRUCTIONS MAY NOT INCLUDE ALL THE TERMS OF THE AGREEMENT WHICH IS THE SUBJECT TO THIS ESCROW. READ THESE INSTRUCTIONS CAREFULLY, AND DO NOT SIGN THEM UNLESS THEY ARE ACCEPTABLE TO YOU."

Notwithstanding efforts on Bass's and, to some extent, Myers's parts to alert the Andersons that the $500 consideration was ready for transmittal to them and that the option agreement was ready for their signature, the Andersons showed no further interest in the transaction.

Plaintiff later sold his rights in the Starker property and development to Myles Breadner. Although the negotiations with Breadner did not take place until close to the end of the year, plaintiff contends that he considered the Anderson option to be viable at the time of the negotiations and that he communicated that understanding to Breadner. Plaintiff maintains that he first learned about the loss of the Anderson option after he and Breadner had entered into an agreement for a purchase price of $400,000. Because of that discovery, according to plaintiff, he acquiesced in Breadner's request for a $20,000 reduction in their contract price.[2]

---

[2] The parties disagree about the reason for the $20,000 reduction. Defendant argues—and makes related assignments of error—that nothing attributable to defendant specifically or the Anderson transaction generally played any role in plaintiff's agreement to reduce the purchase price under his contract with Breadner. However, the grounds for our disposition of the appeal make it unnecessary for us to reach that issue.

Plaintiff claimed that that $20,000 loss and approximately $16,000 of additional damages resulted from defendant's negligence and breach of contract in connection with the Anderson escrow. Plaintiff alleged that defendant, through its agent Bass, was negligent and breached its contract in the following particulars:

"a. Defendant caused the transaction to fail by not following the terms of the escrow and instructions it received;

"b. Defendant failed to notify Bowles Corporation that on or before March 25, 1994 Anderson had repudiated said Letter of Intent and refused to sign an Option Agreement with Bowles Corporation;

"c. Defendant caused Bowles Corporation to believe that the option transaction had been closed after March 25, 1994 when in fact defendant had not closed the transaction;

"d. Defendant failed to notify Bowles Corporation that defendant did not close the transaction which was the subject of its escrow for 'Anderson/Bowles Corporation';

"e. Defendant failed to return the $500 option consideration received from Bowles Corporation within a reasonable time after defendant knew the transaction which was the subject of its escrow for 'Anderson/Bowles Corporation' had not and would not close."

More summarily stated, plaintiff's theory of the case was that defendant failed to perform its putative affirmative obligations to consummate his bargain with the Andersons and, having failed in that, then failed to perform its putative obligations to inform plaintiff that the Anderson transaction had not been consummated. The jury found for plaintiff on both claims, and defendant appeals. It assigns error, among other things, to the trial court's denial of its motion for a directed verdict as to both claims.

Defendant relies on *Gebrayel v. Transamerica Title Ins. Co.*, 132 Or App 271, 888 P2d 83, *rev den* 321 Or 47 (1995), and related cases, for the proposition, as defendant states it:

"Oregon law provides that an escrow officer has no duty to protect or promote the interests of the parties, but only has a duty to act neutrally, and to follow the terms of the

escrow instructions. It is only if an escrow officer breaches that duty of neutrality by volunteering information to a party, and that information is relied on by a party to its detriment, that the escrow officer has a duty to exercise reasonable care."

Plaintiff characterizes defendant's argument as a "theory that an escrow company cannot be liable in negligence or contract unless it also breaches its duty of neutrality to the injured party." Plaintiff comments:

"This new theory, wholly unsupported by precedent, would create an immunity for escrows who remain neutral while making a perfect shambles out of their escrow instructions. Neither public policy nor due process harmonize with such a needless and unfair doctrine."

In our view, neither party is completely correct in its understanding of what our cases say. As relevant to the facts here, however, defendant's understanding is closer to correct than plaintiff's. We said in *Lindstrand v. Transamerica Title Ins. Co.*, 127 Or App 693, 698, 874 P2d 82 (1994):

"[A]lthough an escrow holder owes no duty to advise the parties on their legal rights and an escrow holder is not required to protect the rights of any one party as against another, it can assume a duty to exercise due care when it volunteers advice."

Hence, in *Lindstrand*, we concluded that the defendant escrow agent could be held liable on a negligence theory for communicating incorrect information to a party about a height restriction that the defendant thought it discerned in papers that came to its attention in conjunction with its performance of the escrow. We explained:

"Although defendant was under no obligation to discuss or provide information to plaintiffs concerning specific restrictions in the title report, it elected to do so at the time of the closing of the escrow. The jury could find that defendant supplied the document about the restriction as an adjunct to the performance of its other duties. If that is so, it had a duty to exercise due care in providing the restriction." *Id.* at 698.

In *Gebrayel*, by contrast, we held that the plaintiff purchaser did not have a viable claim against the defendant,

as escrow agent, for its failure to disclose facts to the plaintiff about the existence of an easement and a possible claim that the defendant had learned from the seller and had included in its policy in its related capacity as title insurer. We explained:

> "Although plaintiff 'vehemently disagrees' that defendants acted with neutrality in this case and asserts that defendants had a duty to disclose the existence of a possible claim, we find no such duty. Defendants' actions in adding exclusion 2 did nothing to further either the seller's or the buyer's interest; it only served to further the title insurer's interest. * * * Without an obligation to disclose, defendants did not breach any further duty." *Id.* at 279.

We also distinguished the situation in *Gebrayel* from *Lindstrand* and other cases where we had held that the claims against the escrow agents could proceed, by noting that the claims in the latter cases were viable *because* the defendants *had* volunteered the information giving rise to the actions. *Gebrayel*, 132 Or App at 280 n 8.

■ In the present case, plaintiff's negligence claim is a combination of a nondisclosure theory akin to the one that we rejected in *Gebrayel*, and a theory that defendant was somehow responsible for assuring the consummation of the option transaction on plaintiff's behalf rather than simply acting as a neutral "stakeholder" for the parties. Plaintiff makes much of the fact that defendant accepted some responsibility for preparing the contract form and of the fact that plaintiff could not have known—in the absence of communication from defendant—when and whether the Andersons had performed and when and what plaintiff himself had to do to assure his own compliance with the conditions of the letter of intent.

It is true that the letter of intent made the Andersons' signature the event from which the time for plaintiff's performance was to be measured, and it is also true that he could have no direct knowledge of when they signed the letter, because he signed it before it was sent to them. It undoubtedly would have been preferable from plaintiff's standpoint for the letter to have specified a date certain by which his $500 check and the option agreement had to be

delivered into escrow, rather than making the time for delivery run from a date that plaintiff could not independently know. However, his own employee prepared the letter and the fact that it was structured as it was did not create an obligation in defendant or anyone else to facilitate plaintiff's satisfactory performance in ways that the letter itself did not. Neither did any of the instructions that were subsequently given to defendant. Obviously, plaintiff could have avoided the dilemma by delivering his $500 check and the other necessary papers into escrow with defendant at the same time that he caused the letter of intent to be transmitted to the Andersons for their signature. Again, however, the fact that he did not choose to satisfy the requirements of the letter in that way did not make anyone else responsible for his performance or accountable for his nonperformance.

■ Plaintiff also contends, however, that defendant did assume responsibility for preparation of the option agreement, by accepting Myers's instructions and his own, as well as by oral manifestations and by conduct. However, the evidence lends little support to that contention: The most that can be said for it is that Bass agreed to type information that others were to provide onto a preprinted form. However, whatever merit the contention might have, it is academic. As of March 25, when the Andersons came to defendant's office, more than 15 days had passed since they had signed the letter of intent and plaintiff had not tendered the $500 consideration for the option to the escrow agent. The Andersons said "the deal was off," as they had the right to do, and, notwithstanding the continuing efforts of others to resuscitate the transaction, they never later signified otherwise. Stated differently, the transaction was at an end, without more, because plaintiff had not paid the required consideration.[3]

■■ Insofar as plaintiff's theory of recovery is that defendant should have informed him of the collapse of the Anderson deal, as distinct from preventing its collapse, *Gabrayel* and other cases are squarely and correctly to the contrary.

---

[3] We also note that, even if the status of the option agreement were of any continuing relevance, plaintiff was presumptively aware that he had not signed and delivered one into escrow as of March 25. The letter of intent required his delivery of an *executed* option agreement, as well as the $500, within 15 days after the Andersons subscribed the letter.

Plaintiff's different view rests on a fundamental misperception of the role of an escrow agent. Defendant's duty was to hold and dispose of "stakes," pursuant to the parties' instructions; it was neither defendant's responsibility nor its prerogative to advise the parties about the status or progress of their dealings and relationship with one another. Indeed, it may well have been an improper intrusion into the parties' transaction if defendant *had* done what plaintiff maintains it was required to do and had informed plaintiff of the Andersons' professed unwillingness to proceed. Such a disclosure potentially could have impeded or prevented subsequent efforts by the parties to revitalize their own transaction, had they otherwise had the interest and the desire to do so.

■　　In any event, in the absence of a contractual or other relationship beyond the usual escrow arrangement, it is not the function of an escrow agent to monitor, steward or salvage the business relationship of the principals. It is the principals' own responsibility to create, conduct and communicate with one another about their fundamental business and contractual dealings. In other words, it is normally the responsibility of the parties rather than that of their escrow agent to stay informed about such fundamental aspects of their business relationship as whether they continue to have one. Although the usual role of the escrow agent can of course be augmented by contract, there was no evidence here that defendant assumed and breached any contractual obligations that differed in substance from those that were incumbent upon it in the regular performance of its escrow duties — or at least none that could have contributed independently to any injury that plaintiff claims to have suffered. Plaintiff's contract theory is nothing more than a separate but equally hollow shell for the same arguments that he advances under his negligence theory.

We agree with plaintiff that an escrow agent who makes a "perfect shambles" of the escrow instructions can be accountable for negligence and, however defendant may read them, our cases do not say otherwise. However, we disagree with plaintiff insofar as he contends that there is any legal or evidentiary basis for that as a characterization of what happened here. Rather, this was a case where plaintiff's inattention allowed his dealings with the Andersons to become a

shambles, and there is no viable basis for his attempt to shift the responsibility for that shambles to defendant. As a matter of law, defendant committed no actionable negligence or breach of contract that caused any of plaintiff's alleged damages. The trial court erred by denying the motion for a directed verdict on both claims.

Reversed and remanded with instructions to enter judgment for defendant.