Argued and submitted May 15, 2012, general judgment reversed and remanded
as to GDH, LLC; supplemental judgment awarding costs and disbursements to
GDH, LLC, reversed; otherwise affirmed August 21, 2013

## SPS OF OREGON, INC.,
an Oregon corporation;
and Vern Spaur,
*Plaintiffs-Appellants,*

*v.*

## GDH, LLC,
a Washington limited liability company;
and Mark Comstock,
*Defendants-Respondents.*

Wallowa County Circuit Court
070512862; A147516

309 P3d 178

D. Zachary Hostetter argued the cause for appellants.
With him on the briefs were Rebecca J. Knapp and Hostetter
Knapp, LLP.

R. Scott Jerger argued the cause for respondent GDH, LLC. With him on the brief was Field Jerger LLP.

Douglas E. Hojem argued the cause for respondent Mark Comstock. With him on the brief was Corey, Byler, Rew, Lorenzen & Hojem.

Before Armstrong, Presiding Judge, and Duncan, Judge, and Brewer, Judge pro tempore.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Plaintiff appeals a general judgment dismissing his claim for wrongful initiation of civil proceedings and two supplemental judgments awarding defendants costs and prevailing-party fees. He raises five assignments of error, which we address in turn. We affirm the trial court on each of plaintiff's assignments of error, with one exception: we conclude that the trial court erred when it entered a directed verdict in favor of defendant Hansen.[1] Accordingly, we reverse and remand.

This action arose as a consequence of a conversion action that defendant Hansen and his attorney, defendant Comstock, filed against plaintiff, concerning a number of cattle in plaintiff's possession. Plaintiff contends that defendants wrongfully initiated the conversion action in order to recover a debt owed to Hansen by a third party, Garnett. In support of that claim, plaintiff offered evidence detailing Hansen's history of dealings with Garnett—a litigious relationship spanning nearly 20 years—as well as evidence about the parties' conduct and communications during the lead-up to the conversion action. Much of that evidence does not affect our analysis of the issues on appeal. We address it only to the extent necessary to provide context for our discussion of the conversion action and the current action.

In 1995, Hansen loaned Garnett $170,000, which he secured with a mortgage on Garnett's ranch and a security interest in Garnett's farm equipment and livestock. Hansen also purportedly loaned Garnett an additional $29,000 for the purpose of purchasing cattle, although Hansen has since been unable to locate any documentation of the second loan. Garnett thereafter defaulted on his payment obligations, and Hansen obtained a foreclosure judgment granting him a "valid, subsisting, and prior lien" in Garnett's ranch

---

[1] Although there are two named plaintiffs in this case—SPS of Oregon, Inc., and Vern Spaur—all relevant actions taken by SPS were by and through Spaur, and, to avoid confusion, we refer to them singularly as "plaintiff." Similarly, although GDH, LLC, is named as a defendant in this case, George Hansen is the managing member of GDH, LLC and made all relevant decisions on its behalf. Therefore, we refer to GDH, LLC, the entity as "Hansen" where appropriate throughout this opinion.

and the remaining collateral, including Garnett's cattle. A foreclosure sale was held in March 2001 for Garnett's ranch. Comstock represented Hansen in the foreclosure proceeding and in other matters relating to the defaulted Garnett loan.

In the interim between the foreclosure judgment and sale, Garnett and plaintiff agreed to a trade, in which Garnett would exchange $8,000 and a number of cattle for a pickup truck and hay from plaintiff. Despite Garnett's assurances that the cattle were not subject to any lien, shortly after the deal was struck, plaintiff performed a search and located a record of Hansen's security interest in Garnett's cattle and calves. Plaintiff promptly contacted Hansen, notified him of the pending trade, and asked him to confirm that the cattle would have clear title. Plaintiff also indicated that no money would be exchanged without Hansen's approval.

Hansen and plaintiff had a number of telephone conversations, but they were unable to agree on the import of Hansen's lien or, consequently, on terms for the sale of the cattle. At various times during those conversations, Hansen would get heated, yell, or abruptly terminate the phone call—on one occasion threatening to "kick [plaintiff's] ass." Plaintiff, in turn, repeatedly offered to purchase the cattle from Hansen if Hansen could "prove ownership." Because he represented Hansen in the underlying dispute with Garnett, Comstock was eventually brought in to help resolve the disagreement. Following a series of conversations in which plaintiff explained that he felt "torn between" Hansen and Garnett, who also claimed to own the cattle, and that he could easily gather the cattle for identification, plaintiff and Comstock agreed that the simplest manner of resolving the dispute would be a private sheriff's sale.

However, before that sale could occur, Garnett contacted Comstock, claiming that the cattle in fact belonged to his daughter and, thus, were not subject to Hansen's security interest. He further contended that the obligation that he owed Hansen had been satisfied. Thereafter, Comstock cancelled the sale, later testifying that he did not want to subject Hansen to liability by inadvertently selling cattle in which Hansen had no interest. The dispute remained ongoing, and

eventually Comstock sent plaintiff a letter, demanding that plaintiff either "return the cattle and account for all of the progeny of the cattle since they were placed with [plaintiff] by [Garnett], or make an offer to purchase the cattle if he wishe[d] to keep them." Plaintiff did not respond.

Thereafter, Comstock, acting on behalf of Hansen, filed a conversion action against plaintiff, alleging that Garnett had transferred the cattle to plaintiff "in an effort to hinder and prevent the recovery of the collateral subject to the security interests of [Hansen]" and that plaintiff and Garnett had "acted in concert in depriving [Hansen] of the possession of the cattle and livestock subject to the valid security interest." As a result, it alleged, Hansen

> "was unable to find the livestock to levy and assemble the livestock for sale by the sheriff of Wallowa County, Oregon, in execution of the Judgment and Decree of Foreclosure, because [Hansen] did not know of the location of the livestock."

Further, it alleged that plaintiff had "wrongfully withheld the possession" of the cattle and that he had denied Hansen his "current legal right to possess, for judicial sale," the cattle, "despite demand for return and turnover of the livestock and progeny." Finally, the action alleged damages of $30,000.

Plaintiff responded to those allegations in its answer by contending, among other things, that

> "[Hansen] is estopped from asserting [his conversion claim against plaintiff]. [Plaintiff] did not deny [Hansen] possession of any cattle. Upon [Hansen's] request, [plaintiff] agreed to allow [Hansen] to gather cattle on [plaintiff's] property and take possession thereof. [Hansen] never made arrangements with [plaintiff] to gather any cattle on [plaintiff's] property and to take possession therof."

Shortly afterwards, Comstock sent a letter to plaintiff (the "Comstock letter") addressing that assertion:

> "Neither I nor [Hansen] have a recollection or record of [plaintiff's] offer, however, [Hansen] is ready and willing to accept this offer to pick up the cattle upon notice that they are assembled and take possession of the cattle in preparation for sale."

Plaintiff did not respond to Comstock's letter, and the matter proceeded to trial. The jury ultimately returned a verdict in favor of plaintiff, which led to the entry of a general judgment dismissing Hansen's claims with prejudice and awarding plaintiff costs and disbursements.

Plaintiff then sought an enhanced prevailing party fee under ORS 20.190.[2] After a hearing, the trial court entered a supplemental judgment awarding plaintiff an enhanced prevailing party fee of $5,000, the maximum amount allowed under ORS 20.190. That judgment included findings that Hansen "did not act in good faith," that his actions leading up to the action were "reckless and malicious," and that the conversion claim was "not objectively reasonable."

Plaintiff filed this action thereafter, claiming that Comstock and Hansen had wrongfully initiated the conversion action. Plaintiff alleged that Hansen and Comstock "did not have probable cause to initiate or prosecute the Complaint for conversion against plaintiff[] in the prior civil action" and that Comstock "did not file the prior civil action against plaintiff[] for the purpose of securing an adjudication of [Hansen's] right to livestock in possession of plaintiff[]." Instead, plaintiff alleged, Comstock brought the conversion action "to pressure plaintiffs into paying $30,000 to [Hansen] when [Comstock] knew [that Hansen] had no valid claims against either plaintiff[] or Garnett[]." In plaintiff's view, that $30,000 represented money Comstock had failed to collect in the foreclosure action against Garnett, which Comstock felt pressured to pursue from plaintiff. Plaintiff also alleged that he had "offered to assist [Comstock] and [Hansen] to gather the livestock and to assist [them] in determining which, if any, of the livestock

---

[2] ORS 20.190 provides, as relevant:

"(3) In addition to the amounts provided for in subsection (2) of this section, in any civil action or proceeding in a circuit court in which recovery of money or damages is sought, the court may award to the prevailing party up to an additional $5,000 as a prevailing party fee. The court shall consider the following factors in making an award under the provisions of this subsection:

"(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

"(b) The objective reasonableness of the claims and defenses asserted by the parties."

in plaintiff['s] possession were subject to a security interest held by defendant [Hansen,]" but that "[n]either [Hansen] [n]or [Comstock] responded to [plaintiff's] offer."

Thus, from the outset, the litigation centered on whether Hansen and Comstock had filed the conversion action without probable cause and with malice, which both Hansen and Comstock denied. Further, on the issue of probable cause, Hansen raised the affirmative defense of advice of counsel, contending that, at all times pertinent to the conversion action, he had acted in good faith on the advice of counsel after a full and frank disclosure of the relevant facts. *See Pereira v. Thompson,* 230 Or App 640, 675, 217 P3d 236 (2009).

Before trial, plaintiff filed a motion in limine seeking, among other things, a determination that the supplemental judgment from the conversion action—particularly the findings that Hansen "did not act in good faith," that his actions were "malicious," and that the suit was "not objectively reasonable"—conclusively established the existence of malice and the lack of probable cause as to Hansen. The court declined to afford the supplemental judgment preclusive effect on those issues, concluding that the factual issues decided in the supplemental judgment were not identical to the elements of plaintiff's wrongful-initiation claim.

The action proceeded to trial, and plaintiff testified at length about the Garnett transaction, as well as his dealings with Hansen and Comstock. Of note, plaintiff testified that, during his initial conversations with Hansen, he offered to gather the cattle and return them: "And I says, 'I just want to get it resolved. You can have the cows. Come and get the cows.'" Plaintiff testified that he "made numerous offers [to Hansen] to come and get [the] cows" but that his efforts were unsuccessful. Finally, he testified that, before they agreed to proceed with a private sheriff's sale, Comstock told plaintiff that "[Hansen] don't want them dumb cows. He's got no business with them cows."

On cross-examination, Comstock sought to introduce the Comstock letter, sent in reply to the estoppel defense that plaintiff had raised in the conversion action. 258 Or App at 214. Plaintiff objected, contending that the

letter contained inadmissible hearsay statements, that the letter itself was an inadmissible settlement offer, and that the letter was irrelevant. In response, Comstock contended that the letter did not constitute hearsay because it served as an operative fact—*viz.*, a response to plaintiff's offers to return the cattle—that, even assuming the letter was an offer of settlement, plaintiff had opened the door by repeatedly testifying that he had offered to return the cattle, and that the letter was relevant because it related directly to plaintiff's repeated testimony regarding his offer to return the cattle. The court admitted the letter, noting "I do believe it's admissible for the reasons that [Comstock] has set forth and I'll adopt those."

At the close of plaintiff's evidence, Hansen and Comstock each moved for a directed verdict. Hansen contended that plaintiff had failed to show that Hansen had acted without probable cause, and, specifically, he contended that plaintiff had failed to produce evidence rebutting Hansen's contention that at all times he had relied on the advice of counsel. Plaintiff responded, in turn, that he was not required to disprove Hansen's affirmative defense and, in any event, that whether Hansen had relied on Comstock's advice in good faith was an issue of fact for the jury. Comstock contended that plaintiff had failed to present any evidence directly relating to malice and that, although malice generally may be inferred as to litigants based on proof of an absence of probable cause, it cannot be inferred as to their attorneys.

The trial court granted both motions in a brief oral ruling. As to Comstock, the court concluded that there was

> "nothing with regards to any evidence of malice on the part of Mr. Comstock. There's been nothing produced to that end, looking at all the evidence."

As to Hansen, the court concluded that Hansen "was relying on the [advice] of his attorney." The court entered a general judgment dismissing plaintiff's complaint with prejudice and, thereafter, entered a pair of supplemental judgments awarding costs and disbursements to Hansen and Comstock.

On appeal, plaintiff raises five assignments of error, challenging the trial court's refusal to give preclusive effect to the supplemental judgment from the underlying conversion case, the admission of the Comstock letter, the entry of directed verdicts in favor of both Hansen and Comstock, and the entry of the supplemental judgment awarding costs and disbursements. We begin with a discussion of the legal principles underlying plaintiff's claim and then address the assignments of error in turn.[3]

Under Oregon law, the elements of a claim for wrongful initiation of a civil proceeding are (1) commencement and prosecution by the defendant of a judicial proceeding against the plaintiff; (2) termination of the proceeding in the plaintiff's favor; (3) absence of probable cause to prosecute the action; (4) existence of malice; and (5) damages. *Pereira*, 230 Or App at 674-75; *Roop v. Parker Northwest Paving Co.*, 194 Or App 219, 237-38, 94 P3d 885 (2004), *rev den*, 338 Or 374 (2005). In this action, only the existence of probable cause and malice was disputed.

"Probable cause," in the wrongful-initiation context, means that the person initiating the civil action "reasonably believes" that he or she has a good chance of prevailing— that is, he or she has an objectively reasonable, subjective belief that the claim has merit. *Pereira*, 230 Or App at 675. Although the existence of probable cause is a legal question for the court when the facts or inferences are undisputed, "a jury must decide the facts and the court must instruct the jury what facts constitute probable cause" when the facts are in dispute. *Id.*; *Varner v. Hoffer*, 267 Or 175, 178-79, 515 P2d 920 (1973).

Tied to the issue of probable cause, reliance on advice of counsel is an affirmative defense to a claim of wrongful initiation of civil proceedings. *Hartley v. Water Resources Dept.*, 77 Or App 517, 520, 713 P2d 1060, *rev den*, 301 Or 78 (1986). If the defendant establishes that the defendant sought and relied upon the advice of counsel in good faith,

---

[3] In his final assignment of error, plaintiff argues that, to the extent that we reverse the general judgment dismissing plaintiff's claim, the supplemental judgments awarding costs and disbursements should be deemed reversed under ORS 20.220(3)(a). Neither Hansen nor Comstock dispute that point, and we do not address it further.

after a full and frank disclosure of all pertinent facts, to initiate the disputed action, the defense succeeds, and the existence of probable cause is established as a matter of law. *Id.* at 520-21. However, whether a defendant sought and relied on the advice of counsel in good faith is a question of fact for the jury, as is whether that reliance was preceded by a full and frank disclosure of the pertinent facts. *Lampos v. Bazar, Inc.*, 270 Or 256, 270, 527 P2d 376 (1974).

In turn, "malice," in the context of a wrongful-initiation claim, is "the existence of a primary purpose other than that of securing an adjudication of the claim." *Erlandson v. Pullen*, 45 Or App 467, 477, 608 P2d 1169 (1980). Malice, unlike probable cause, is a factual question for the jury. *Id.* With regard to the litigants in an underlying, allegedly wrongful action, a jury may permissibly infer in most cases that an action brought in the absence of probable cause is brought with malice. *Alvarez v. Retail Credit Ass'n*, 234 Or 255, 263-65, 381 P2d 499 (1963). The same is not true for the attorneys who pursue such claims on behalf of clients. Instead, there must be "independent evidence substantiating an attorney defendant's 'improper purpose' before such a defendant can be held liable for wrongful initiation of a civil proceeding." *Bachmeier v. Tuttle*, 195 Or App 83, 91, 96 P3d 871 (2004).

With that in mind, we turn to plaintiff's assignments of error. Plaintiff first assigns error to the trial court's denial of that portion of plaintiff's motion *in limine* that sought a determination that both probable cause and malice had been conclusively determined as to Hansen in the underlying conversion action—thereby precluding relitigation of those issues. Issue preclusion arises in a subsequent proceeding when an issue of ultimate fact—or an issue of law—has been determined by a valid and final determination in a prior proceeding. *Nelson v. Emerald People's Utility Dist.*, 318 Or 99, 103, 862 P2d 1293 (1993); *Evangelical Lutheran Good Samaritan Soc. v. Bonham*, 176 Or App 490, 498, 32 P3d 899 (2001), *rev den*, 334 Or 75 (2002).

For issue preclusion to bar relitigation of a factual or legal issue, five requirements must be met:

1. The issue in the two proceedings must be identical.

2. The issue must have been actually litigated and essential to a final decision on the merits in the prior proceeding.

3. The party sought to be precluded must have had a full and fair opportunity to be heard on that issue.

4. The party sought to be precluded must have been a party—or in privity with a party—to the prior proceeding.

5. The prior proceeding must have been the type of proceeding to which courts give preclusive effect.

*Nelson*, 318 Or at 104.

Here, the supplemental judgment that plaintiff contends satisfied those factors included findings, under ORS 20.190, that Hansen "did not act in good faith," that his actions leading up to the conversion action were "reckless and malicious," and that "[Hansen's] conversion claim against [plaintiff] was not objectively reasonable." The trial court declined to afford those findings preclusive effect, concluding that "[t]he issues presented at that proceeding and at this trial are not identical. Those issues were not actually litigated." Plaintiff contends that the issues underlying those findings were identical to those at issue in his wrongful initiation action, and that the remaining four requirements were also met. Because we conclude that the issues were not identical, we do not address the remaining four requirements.

As to probable cause, plaintiff emphasizes the objective component of that inquiry. *See Roop*, 194 Or App at 238 ("[P]robable cause means that the person initiating the civil action 'reasonably believes' that he or she has a good chance of prevailing—that is, he or she subjectively has that belief *and the belief is objectively reasonable.*" (Emphasis added.)). He contends that the objective component is identical to the requirement, under ORS 20.190(3)(b), that the court consider the "objective reasonableness of the claims and defenses asserted by the parties"—on which the supplemental judgment's objective-reasonableness finding was based. Accordingly, plaintiff argues that the supplemental judgment "is preclusive as to objective reasonableness, thereby making the third element of plaintiff['s] wrongful initiation claim conclusive."

Plaintiff's argument ignores the subtle but significant distinction between the issue considered under ORS 20.190(3)(b)—*viz.*, whether a *claim* is objectively reasonable—and the issue of probable cause in a wrongful-initiation action—*viz.*, whether a litigant's *belief in the merits of the claim* was objectively reasonable. That those two issues are not identical is illustrated by Hansen's affirmative defense of reliance on the advice of counsel. As noted, under that defense, if a defendant can establish that he sought and relied upon the advice of counsel in good faith, after a full and frank disclosure of all pertinent facts, then, as a matter of law, *his belief in the merits of the claim* was objectively reasonable. *See Hartley*, 77 Or App at 520. That counsel's advice may be incorrect and, thus, that the *claim itself* may be objectively unreasonable plays no role in that analysis. *Cf. Roop*, 194 Or App at 242-43 ("[P]laintiffs misapprehend the nature of the inquiry, which is not whether they would have prevailed on the merits of the defamation claims but, rather, whether it was reasonable under the circumstances for Hammond to have asserted them.").

Regarding malice, plaintiff argues that the trial court's finding, under ORS 20.190(3)(a), that Hansen's actions were "reckless and malicious" was, "[a]t its core, * * * the same meaning of the term 'malice' for purposes of a wrongful[-]initiation claim" and, therefore, that the issue of malice is identical in a proceeding for an enhanced prevailing party fee and in a wrongful-initiation action. Plaintiff's conclusion does not follow from his premise. Although the term "malice" may carry the same meaning in ORS 20.190 as it does in a wrongful-initiation action, it is not the abstract meaning of the term that is significant in either proceeding, but whether certain actions were taken with malice. Thus, under ORS 20.190(3)(a), the pertinent inquiry is whether "[t]he conduct of the parties in the transactions or occurrences that gave rise to the litigation" was malicious. In contrast, in an action for wrongful initiation of civil proceedings, the plaintiff must prove that the underlying action was commenced or prosecuted with malice.

The issue whether "[t]he conduct of the parties in the transactions or occurrences that gave rise to the litigation"

was "malicious" encompasses far more than whether the litigation was itself commenced and prosecuted with malice—especially in cases such as this, where the "conduct of the parties" relevant to ORS 20.190 stretches over the course of several years.

In light of those differences, we conclude that the issues of both objective reasonableness and malice determined in the supplemental judgment in the underlying conversion action were not identical to the elements of plaintiff's wrongful-initiation action. The trial court did not err when it denied the portion of plaintiff's motion *in limine* seeking to preclude litigation of those issues.

In his second and third assignments of error, plaintiff challenges the trial court's grant of directed verdicts in favor of Comstock and Hansen. As noted, the court concluded that plaintiff had failed to present evidence of malice on the part of Comstock and that Hansen had relied on the advice of counsel at all pertinent times. Regarding Comstock, plaintiff argues that there was sufficient evidence to create a question of fact as to whether Comstock filed the conversion action for the purpose of "attempting to collect money from plaintiff[] on an unsecured $29,000 loan." Regarding Hansen, plaintiff argues that the trial court impermissibly shifted the burden of proof—or disproof—for Hansen's affirmative defense onto plaintiff and, in any event, that there was insufficient evidence to support a directed verdict.

In reviewing the trial court's directed verdicts in favor of defendants, we view the facts in evidence in plaintiff's favor, extending the benefit of every beneficial inference that may reasonably be drawn from those facts, to determine whether each defendant was entitled to a favorable decision as a matter of law. *Roop*, 194 Or App at 237; *Lindstrand v. Transamerica Title Ins. Co.*, 127 Or App 693, 695, 874 P2d 82 (1994). A directed verdict based on the insufficiency of evidence is appropriate only if there is a complete absence of proof on an essential issue. *Kotera v. Daioh Int'l U.S.A. Corp.*, 179 Or App 253, 272, 40 P3d 506 (2002). Accordingly, we review the record for any evidence that would allow a reasonable factfinder to conclude otherwise. *Id.*; *Roop*, 194

Or App at 237. We first address the directed verdict in favor of Comstock before moving on to Hansen.

Plaintiff contends that the trial court erred in granting Comstock's motion for a directed verdict on the basis of insufficient evidence of malice, because plaintiff presented evidence "sufficient to create a question of fact about whether defendant Comstock filed the conversion action on behalf of defendant [Hansen] for the improper purpose of attempting to collect money from plaintiff[] on an unsecured $29,000 loan." Plaintiff identifies large portions of the trial transcript relating to the $29,000 loan in support of his contention. He contends that that evidence creates a factual issue "as to whether defendant Comstock knew * * * that [Hansen] had no basis for claiming a security interest in the cattle," and that "[i]t follows that if defendant Comstock knew that [Hansen] did not have a security interest in the cattle in plaintiff['s] possession, a question of fact remained as to whether defendant Comstock filed the conversion action for the purpose of collecting money from plaintiff[] on an unsecured loan."

Plaintiff's focus is misplaced: Despite his use of the phrase "improper purpose," plaintiff's argument centers on the absence of *probable cause*. Plaintiff argues that Comstock lacked a subjective belief in the merits of the conversion claim and that "it follows" that a question of fact remained as to malice—he points to no other evidence implicating malice. Stated another way, plaintiff argues that Comstock lacked probable cause to file the conversion action, and that that lack of probable cause—standing alone—may be used to infer malice. It cannot. *Bachmeier*, 195 Or App at 90 ("[T]he fact that the attorney believed the claims to be without probable cause does not, without more, support a legally sufficient inference that the attorney acted for an improper purpose in doing so.").

As noted, "malice" in this context means "the existence of a primary purpose *other than that of securing an adjudication of the claim.*" *Erlandson*, 45 Or App at 477 (emphasis added). Here, Hansen filed the conversion action through Comstock, alleging $30,000 in damages. Accepting

plaintiff's characterization of the facts, he has still introduced no evidence that Comstock filed the conversion action for any purpose other than the adjudication of that claim and, consequently, the recovery of $30,000 in damages from plaintiff. Accordingly, the trial court did not err in granting Comstock's motion for a directed verdict.

Turning to the directed verdict in favor of Hansen, plaintiff argues, first, that, by granting a directed verdict on the basis of Hansen's affirmative defense of advice of counsel, the trial court impermissibly shifted the burden of proof onto plaintiff and that, in any event, viewing the evidence in the light most favorable to plaintiff, the directed verdict was not appropriate because a reasonable factfinder could conclude that Hansen had failed to disclose relevant facts to Comstock or that Hansen did not rely in good faith on Comstock's advice.

As noted, reliance on advice of counsel is an affirmative defense to a claim of wrongful initiation of civil proceedings, under which a defendant may establish probable cause, as a matter of law, if the defendant demonstrates that he or she sought and relied on the advice of counsel in good faith, after a full and frank disclosure of the pertinent facts. *Hartley*, 77 Or App at 520-21. Embedded in that defense are two significant questions of fact: whether a defendant sought and relied upon the advice of counsel in good faith and whether that reliance was preceded by a full and frank disclosure of the pertinent facts. *Lampos*, 270 Or at 270. Interpreting the facts in evidence that bear on those questions in favor of plaintiff and granting plaintiff the benefit of any reasonable inference that may be drawn from those facts, we conclude that Hansen was not entitled to a favorable decision as a matter of law.

As to good-faith reliance, plaintiff argues that—with the facts viewed in his favor—numerous allegations forming the basis of Hansen's conversion action were false, that Hansen knew or should have known that they were false, and, accordingly, that a reasonable jury could infer that Hansen "could not have relied in good faith on allegations * * * [Hansen] knew to be false." Similarly, plaintiff notes

the paucity of evidence relating to the information Hansen disclosed to Comstock and, particularly, that there was no evidence that Hansen disclosed a number of facts that would have been pertinent in the conversion claim. In response, Hansen argues that "there was ample evidence that [Hansen] disclose[d] all relevant facts to its attorneys and relied in good faith on the advice of its attorneys to prosecute the conversion lawsuit," and, because "plaintiff[] failed to offer any evidence to the contrary," Hansen contends that he was entitled to a directed verdict.

To be sure, evidence was adduced at trial that Hansen relied on the advice of his attorneys when deciding to pursue the conversion action; in his testimony at trial, and in a prior deposition, Hansen consistently took the position that he had relied on his attorneys' expertise in bringing the conversion action. Similarly, evidence was adduced at trial that Hansen had disclosed information to Comstock about the cattle dispute. For example, in his deposition testimony Hansen indicated that he "visited with [Comstock] about everything" relating to the cattle dispute and that, after plaintiff expressed doubt over Hansen's ownership of the cattle, he "took all this to an attorney, so they could prove to [plaintiff] that I was the owner of the cattle."

But it remains a question for the jury whether that reliance was in good faith and whether there was a full and frank disclosure of the pertinent facts. *Lampos*, 270 Or at 271 (noting that the jury must determine whether reliance was in good faith and that "it is a jury question whether a full and fair disclosure has been made"); *Varner*, 267 Or at 183 (same). In light of the evidence presented at trial, it would certainly be reasonable for the jury to find in Hansen's favor on those issues, but the jury could also reasonably find otherwise. Accordingly, the trial court erred in granting Hansen's motion for a directed verdict.

In his fourth assignment of error, plaintiff challenges the admission of the Comstock letter into evidence. During cross-examination of plaintiff, Comstock sought to introduce the letter, which provides, as relevant:

"Neither I nor [Hansen] have a recollection or record of [plaintiff's] offer, however, [Hansen] is ready and willing to accept this offer to pick up the cattle upon notice that they are assembled and take possession of the cattle in preparation for sale."

Plaintiff objected, arguing that the letter was inadmissible hearsay, irrelevant, and an inadmissible settlement offer. In turn, Comstock argued that the letter was admissible as, among other things, an operative fact, and the trial court admitted the letter on that basis.

We agree with the trial court. Comstock introduced the letter in response to plaintiff's testimony that he had repeatedly offered to return the cattle to Hansen and in response to the allegation in plaintiff's complaint that Comstock and Hansen had not responded to those repeated offers. Without regard to whether the sentiments expressed in the letter were true—*i.e.*, that Hansen and Comstock had no recollection of plaintiff's repeated offer or that Hansen was willing to take possession of the cattle in preparation for a sale—the letter itself served as the response that plaintiff alleged was never made. Thus, to the extent that the letter was offered for that purpose, it has independent significance apart from the truth of its contents and, therefore, is not hearsay. *See, e.g., Crainic v. Multnomah Cty. Adult Care Home Program*, 190 Or App 134, 145-46, 78 P3d 979 (2003).

In sum, we conclude that the trial court did not err when it declined to afford preclusive weight to the supplemental judgment in the underlying conversion action, when it granted Comstock's motion for a directed verdict, or when it admitted the Comstock letter. However, the trial court erred when it granted Hansen's motion for a directed verdict as to GDH, LLC.

General judgment reversed and remanded as to GDH, LLC; supplemental judgment awarding costs and disbursements to GDH, LLC, reversed; otherwise affirmed.